CROSS COUNTRY INN, INC., APPELLEE, *v.* SOUTH CENTRAL DISTRICT COUNCIL, UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, APPELLANT.

(No. 88AP-838—Decided May 11, 1989.)

*Emens, Hurd, Kegler & Ritter,* for appellee.

*Cloppert, Portman, Sauter, Latanick & Foley, Frederick G. Cloppert, Jr.* and *Russell E. Carnahan,* for appellant.

WHITESIDE, J. Defendant, South Central District Council, United Brotherhood of Carpenters & Joiners of America, appeals from a judgment of the Franklin County Court of Common Pleas and raises a single assignment of error as follows:

"The trial court erred when it proceeded to exercise jurisdiction over that portion of the plaintiff-appellee's cause of action that related to the peaceful distribution of handbills on the plaintiff-appellee's property, which activity was then the subject of an unfair labor practice charge that had been filed with the National Labor

Relations Board, whose jurisdiction preempts the jurisdiction of the common pleas court."

Plaintiff, Cross Country Inn, Inc., brought this action seeking to enjoin two types of actions conducted by the defendant union: (1) informational handbilling, and (2) picketing. The informational handbilling involved distribution of handbills urging potential patrons of Cross Country Inn to boycott the inn because of a labor dispute involving use of nonunion carpenters at a construction site near Columbus International Airport. The picketing involved occurred at that construction site.

The trial court issued a temporary injunction and then consolidated the hearing on a preliminary injunction with that for a permanent injunction. Defendant filed a motion to dismiss, contending that the activities involved lie within the exclusive jurisdiction of the National Labor Relations Board and, thus, state jurisdiction had been preempted. After conducting a hearing, the trial court issued a permanent injunction (1) limiting handbilling activity at the Cross Country Inn both as to location and number, and (2) restricting the number of picketers that could be at the construction site near the airport to three at each gate, with a maximum of six. By this appeal, defendant does not contest the issuance of the injunction limiting the number of picketers at the construction site but, instead, raises only the issue of whether the limitation on the handbilling is inconsistent with the jurisdiction of the National Labor Relations Board.

In the entry issuing the permanent injunction, the trial court made certain factual findings, including finding number four, which reads:

"That the Defendant and others associated with them [sic] have committed numerous acts of trespass at inns owned and operated by the Plaintiff for the purpose to distribute handbills requesting potential customers of the Plaintiff not to patronize the Plaintiff's inns and have hindered the ingress and egress to Plaintiff's construction site."

This is the only salient factual finding by the trial court; the court, in its judgment entry, did not address the jurisdictional issue raised herein. As a conclusion of law, the trial court found in pertinent part:

"1. That the Plaintiff has demonstrated to this Court that it will suffer irreparable damage and injury to its business if it cannot control access to its property that is for the exclusive use of the plaintiff and its customers.

"* * *

"3. That the Plaintiff has demonstrated that continuation of the Defendant's unlawful conduct is harmful to the public as acts of trespass have the inherent potentiality for violence. * * *"

The order of the trial court enjoined defendant and those in active concert or agreement and participation with it from engaging in "unlawful conduct" consisting of:

"a. Congregating or assembling in groups of more than two handbillers at any location of the Plaintiff's inns;

"* * *

"c. Trespassing upon the Plaintiff's property at any of its inns, or other properties owned by the Plaintiff; and

"d. Interfering with persons entering or leaving the Plaintiff's property or with any persons pursuing any other business relationship with the Plaintiff."

Unfortunately, the record on appeal sets forth no evidentiary foundation for the trial court's very limited finding of fact pertinent herein, plaintiff's complaint being verified only upon information, knowledge, and

belief (rather than personal knowledge) and, thus, constituting a very slim, at best, foundation for the making of any finding by clear and convincing evidence. However, the transcript reflects that the trial court recognized only "meager evidence" but commented that "[t]he factual background here, factual what would normally be a proof matter, is pretty much agreed to." Counsel for the defendant apparently agreed, but the agreement was predicated upon the findings of fact made by the trial court in connection with the issue of the temporary restraining order.

In the transcript, the trial court did comment upon the issue of preemption, stating:

"* * * I understand today the general proposition that defendant is raising about preemption, but I believe on the case law in Ohio, there is an entitlement or a right on the part of the court to proceed as far as the order in view of what has transpired."

The difficulty here is that the trial court did not differentiate in these findings between the construction site and operating-motel sites. However, from what meager information there is contained in the record, including the trial court's findings, there appears to be a decided difference between the two situations. The appeal concerns itself only with the passing of handbills at operating-motel sites.

From the trial court's findings, the meager record, and the arguments of counsel, there is nothing to indicate that handbill passing occurred other than in "public" areas of the motel property and more specifically in the parking lot and driveway areas. Despite the "agreement" as to the facts, counsel for plaintiff characterized the activity as "trespasser activity that was engaged in by people that were handbilling at the various locations." Counsel for defendant, on the

other hand, stated specifically that as to "[t]he allegations of trespass, we believe that our people have been exercising rights under the National Labor Relations Act [which Act] take[s] precedent [*sic*] over state trespass law." Unfortunately, the elements of a trespass under state law have not been discussed or demonstrated. R.C. 2911.21(A) provides as follows:

"No person, *without privilege to do so,* shall do any of the following:

"(1) Knowingly enter or remain on the land or premises of another;

"(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows he is in violation of any such restriction or is reckless in that regard;

"(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;

"(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either." (Emphasis added.)

The facts that appear not to be in dispute are that the persons passing out the handbills entered upon plaintiff's premises and refused or failed to leave when told to do so. The trial court did not even make a factual determination of the existence of these facts, but they are implicit from the argument of counsel. Although it was alleged that plaintiff has a no-solicitation policy of some type, there

was no factual finding of the trial court as to the existence of any such policy. Nor was there a factual finding by the trial court directly bearing upon the issue of whether, under the National Labor Relations Act, defendant has a right to distribute handbills upon plaintiff's premises so long as such right is not abused by acts or threats of violence. Even the meager factual finding made by the trial court is at most a mixed conclusion of fact and law, but the underlying factual foundation for such conclusion is not included in the findings.

The conclusions of law made by the trial court have little foundation in the factual findings; for example, the conclusion of law concerning irreparable injury has absolutely no factual-finding foundation. Similarly, the conclusion of law that there is an "inherent potentiality for violence" has no factual-finding foundation. In short, the trial court made essential conclusions of law without apparent factual foundation since the trial court made no findings of fact which support the conclusions of law as to irreparable injury and potentiality for violence. Perhaps there might be some foundation for such conclusions in the complaint itself with respect to construction sites, but there is none with respect to the distribution of handbills at the operating-motel sites.

These findings are essential because, under applicable law and United States Supreme Court decisions, a state court may issue an injunction of the nature of the one herein granted with respect to the distributon of handbills at operating-motel sites only if (1) there is conduct marked by violence and imminent threats to the public order, or (2) the National Labor Relations Board has determined that the union activity involved is not protected by the National Labor Relations Act. Thus, the court in *San Diego Building*

*Trades Council* v. *Garmon* (1959), 359 U.S. 236, at 247-248, held:

"* * * [W]e have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. * * * We have also allowed the States to enjoin such conduct. * * * State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in *United Construction Workers* v. *Laburnum Corp.* [1954], 347 U.S. 656, found support in the fact that state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the 'type of conduct' involved, *i.e.,* 'intimidation and threats of violence.' * * *'" (Footnote omitted.)

Here, there is no such suggestion, much less a finding, of actual or threatened violence. Rather, the trial court found as a matter of law that there was a "potentiality for violence" without elucidation, in apparent reliance upon *Lawson Milk Co.* v. *Retail Clerks Union Local 698* (1977), 59 Ohio App. 2d 207, 13 O.O. 3d 229, 394 N.E. 2d 312, cited by plaintiff. In that case, despite a stipulation that "no threats or violence occurred," *id.* at 208, 13 O.O. 3d at 230, 394 N.E. 2d at 314, the court of appeals found that every act of trespass has the "inherent potentiality of violence," *id.* at 215, 13 O.O. 3d at 233, 394 N.E. 2d at 318.

Unfortunately, the *Lawson Milk* court misconstrued, and misapplied, *San Diego Building Trades Council, supra,* the very case upon which it purportedly relied. Very clearly, the majority of the United States Supreme

Court in that case limited state court action to "conduct marked by violence and imminent threats to the public order." The *Lawson Milk* court, as did the trial court in this case, found only "potentiality" for conduct marked by violence, not an imminent threat of such conduct. In addition, a few months after the *Lawson Milk* decision, the United States Supreme Court, in *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters* (1978), 436 U.S. 180, reversed a state court determination similar to, and predicated upon similar reasoning to, *Lawson Milk*. *Sears* involved a situation where "the picketing was both arguably prohibited and arguably protected by federal law." *Id.* at 187. The court noted that:

"* * * [S]tate jurisdiction to enforce its laws prohibiting violence, defamation, the intentional infliction of emotional distress, or obstruction of access to property is not pre-empted by the NLRA. But none of those violations of state law involves protected conduct. In contrast, some violations of state trespass laws may be actually protected by § 7 of the federal Act." (Footnotes omitted.) *Id.* at 204.

In *Sears,* the Supreme Court found the assertion of state court jurisdiction to be appropriate because it did "not create a significant risk of prohibition of protected conduct" (*id.* at 207) since the union had failed to invoke the jurisdiction of the National Labor Relations Board and the employer, Sears, had no right to do so. In contrast, here, defendant union did file a complaint on the same issues with National Labor Relations Board.

The teaching of *San Diego Building Trades Council, Sears* and other Supreme Court cases analyzed therein is that where an issue has been presented for determination to the National Labor Relations Board, a state court has no jurisdiction to determine that issue. The underlying issue inherent in the trespass law itself is whether defendant union had a "privilege" under federal law to enter upon plaintiff's property to distribute the handbills. Such question is justiciable and not frivolous since the areas utilized apparently were areas open to the public, that is, were not areas restricted to special persons or even employees. The situation here is little different from that of a shopping center parking lot — until such time as the issue is determined by the National Labor Relations Board once the issue has been presented to that board.

Accordingly, since the jurisdiction of the National Labor Relations Board had been invoked by defendant, the trial court erred in exercising jurisdiction in the absence of evidence of conduct involving violence or an imminent threat of violence.

Plaintiff now contends that the preemption doctrine is no longer viable because defendant has dismissed its complaint before the National Labor Relations Board; however, the record on appeal does not so reflect since, apparently, the dismissal occurred during the pendency of this appeal. An uncertified copy of a letter entering such a dismissal dated a few days before the docketing of the appeal in this court is attached to plaintiff's brief, but this letter does not constitute part of the record on appeal. Under the circumstances, having found that the trial court erred in exercising jurisdiction in light of the pendency of the issue before the National Labor Relations Board, we find it necessary to reverse the judgment of the trial court and remand the cause to that court. Any question of mootness because of the alleged dismissal of the charges before the National Labor Relations Board can be and is more properly determined by the trial court in the first instance upon remand. Accordingly, the assignment of error is well-taken.

For the foregoing reasons, the assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

REILLY and MARTIN, JJ., concur.

JOHN D. MARTIN, J., of the Court of Common Pleas of Fairfield County, sitting by assignment in the Tenth Appellate District.