404 S.E.2d 404

**RIESBECK FOOD MARKETS, INC., and Elm Grove Properties, Plaintiffs Below, Appellees,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL UNION 23; Carl Huber, as President of United Food and Commercial Workers, Local Union 23; James Bono, as Secretary–Treasurer of United Food and Commercial Workers, Local Union 23; John Doe and Richard Doe as Officers, Agents, and Members of United Food and Commercial Workers, Local Union 23, Defendants Below, Appellants.**

No. 19485.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 1991.

Decided April 3, 1991.

James M. Sturgeon, Jr., Pauley, Curry, Sturgeon & Vanderford, Charleston, J. Michael Kota, Bricker & Eckler, Columbus, Ohio, Don A. Zimmerman, Bricker & Eckler, Washington, D.C., for plaintiffs below, appellees.

Daniel W. Dickinson, Jr., Robinson & Dickinson, Wheeling, James R. Reehl, Pittsburgh, Pa., for defendants below, appellants.

MILLER, Chief Justice:

In this appeal from a final order of the Circuit Court of Ohio County dated December 19, 1988, we are asked to determine whether the circuit court was correct in restricting informational picketing on private property. We conclude that jurisdiction of the case was preempted by federal law, and we reverse the judgment of the circuit court.

Riesbeck Food Markets, Inc. (Riesbeck) is an Ohio corporation which operates a supermarket in the Elm Grove Crossing shopping center in Wheeling. Riesbeck leases the premises from Elm Grove Properties (Elm Grove), a general partnership which owns the shopping center. United Food and Commercial Workers, Local Union 23 (Union), is an unincorporated labor association with offices in Pittsburgh, Pennsylvania, which represents employees of other retail grocery stores in northern West Virginia.

On September 7, 1988, the Union established an informational picket line outside the customer entrances to the Riesbeck store. The pickets carried placards which identified Riesbeck as a nonunion employer and asked the public not to patronize the market.[1] In addition, the pickets passed out handbills which elaborated on the non-union theme and urged customers to shop only at Union stores.[2] The store manager asked the pickets to leave the premises, but they refused. The Union apparently made no attempt to organize Riesbeck employ-

1. The complete text of the sign was:
"INFORMATIONAL PICKET LINE
RIESBECKS
THIS IS TO INFORM
THE PUBLIC THAT THIS
EMPLOYER DOES NOT EMPLOY
MEMBERS OF, OR HAVE A
CONTRACT WITH UFCW LOCAL 23,
AFL–CIO–CLC!
PLEASE DO NOT PATRONIZE!"

2. The handbill stated:
"PLEASE DO NOT SHOP AT THIS STORE
"1. THIS EMPLOYER IS A NON–UNION EMPLOYER AND DOES NOT HAVE A CONTRACT WITH, OR EMPLOY MEMBERS OF, U.F.C.W., LOCAL 23, WHICH REPRESENTS OTHER GROCERY STORE EMPLOYEES IN THIS AREA.
"2. UNFAIR, NON–UNION AND FOREIGN COMPETITION HAS DESTROYED SEVERAL PITTSBURGH AREA INDUSTRIES, INCLUDING COAL AND STEEL. PLEASE HELP US PROTECT OUR MEMBERS FROM THE SAME FATE BY SHOPPING ONLY AT U.F.C.W., LOCAL 23 STORES.
"3. SUPPORT YOUR UNION BROTHERS AND SISTERS. SHOP ONLY WHERE YOU SEE THE UNION LABEL ON THE GROCERY STORE DOOR...."

ees, and none of the pickets were employed by Riesbeck.

On September 9, 1988, Riesbeck and Elm Grove filed a complaint in the Circuit Court of Ohio County seeking to enjoin the Union from picketing and handbilling upon their private property. The circuit court issued a temporary restraining order, effectively forcing the Union to move its activities to the public areas at the entrances to the shopping center.[3] Hearings on the issuance of a permanent injunction were set for October 14, 1988, and November 8, 1988.

On September 19, 1988, the Union filed an unfair labor practice charge against Riesbeck with the National Labor Relations Board (NLRB). The Union asserted that Riesbeck's attempts to remove the pickets from the shopping center premises interfered with the rights of employees secured by the National Labor Relations Act (the Act), 29 U.S.C. §§ 151–169 (1988). The NLRB Regional Director subsequently issued a complaint which referred the matter to an administrative law judge for hearing.[4] At the permanent injunction hearings before the circuit court, the Union argued that the NLRB had exclusive jurisdiction of the case.

By order dated December 19, 1988, the circuit court issued a permanent injunction against the Union. The court ruled that the matters at issue in the state court proceedings were not preempted by federal labor law and ordered picketing and handbilling removed to the public areas at the shopping center entrances.

On appeal, the Union's principal contention is that the circuit court's jurisdiction over the case was preempted by provisions of the Act. The Union contends that its peaceful informational picketing of the Riesbeck store was protected by Section 7 of the Act, 29 U.S.C. § 157, which enumerates the rights of employees.[5] In addition, the Union asserts that Riesbeck's demand that the pickets leave the shopping center premises constituted an interference with their Section 7 rights, an unfair labor practice under Section 8 of the Act, 29 U.S.C. § 158.[6]

■ The general rule is that state courts must defer to the primary and exclusive jurisdiction of the NLRB to determine all controversies arising out of activities protected by Section 7 or prohibited by Section 8 of the Act. *See, e.g., San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *United Maintenance & Mfg. Co. v. United Steelworkers,* 157 W.Va. 788, 204 S.E.2d 76 (1974); *McJunkin Corp. v. Bell Lines, Inc.,* 144 W.Va. 330, 108 S.E.2d 12 (1959). *See generally* 48A Am.Jur.2d *Labor & Labor Relations* § 2003 (1979); 51A C.J.S. *Labor Relations* §§ 524, 525 (1967); Annot., 75 L.Ed.2d 988 (1985); Annot., 38 L.Ed.2d 796 (1974). The reason for this exclusivity is to ensure a uniform national labor policy by avoiding the conflicting or incompatible adjudications that would inevitably result from "[a] multiplicity of tribunals and a diversity of procedures." *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776,* 346 U.S. 485, 490–91,

---

3. The order also restricted the number of pickets at each entrance and prohibited obstructive, disruptive, and intimidating behavior on the part of the pickets.

4. The parties have stipulated that the NLRB investigated the unfair labor practice charge until October 4, 1989, when the Regional Director issued the complaint against Riesbeck.

5. 29 U.S.C. § 157 provides:
   "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mu-

tual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title."

6. Section 8 of the Act lists those activities which constitute unfair labor practices. 29 U.S.C. § 158(a) provides, in pertinent part:
   "It shall be an unfair labor practice for an employer—
   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]"

74 S.Ct. 161, 166, 98 L.Ed. 228, 239–40 (1953). *See also International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986); *New York Tel. Co. v. New York State Dep't of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).

■ Guidelines for determining whether labor activity is governed by the Act were set out in *San Diego Building Trades Council v. Garmon, supra.* In *Garmon,* nonemployee union members picketed the employer's place of business, allegedly in an effort to compel the employer to execute a contract to hire only union members. The employer[7] filed an unfair labor practice charge with the NLRB and instituted an action for an injunction in state court. The union contested the state court's power to issue an injunction.

The Court in *Garmon* held that where activities are *clearly* governed by the Act, the NLRB has primary jurisdiction of the case, and state court jurisdiction is preempted.[8] The Court also noted, however, that it is not always clear whether a particular activity is protected by Section 7 or prohibited by Section 8 of the Act. State courts are entitled to retain jurisdiction "where the activity regulated was a merely peripheral concern of the ... Act" or "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act."[9] 359 U.S. at 243–44, 79 S.Ct. at 779, 3 L.Ed.2d at 782. (Footnote omitted). Noting that "courts are not primary tribunals to adjudicate such issues," the Supreme Court concluded: "[W]hen an activity is *arguably* subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 244, 245, 79 S.Ct. at 779, 780, 3 L.Ed.2d at 783. (Emphasis added). *See United Maintenance & Mfg. Co. v. United Steelworkers, supra; McJunkin Corp. v. Bell Lines, Inc., supra. See generally* 51A C.J.S. *Labor Relations* § 525.

It is undisputed that peaceful informational picketing of the type involved here is a protected activity under Section 7 of the Act. *See Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *International Longshoremen's Local 1416 v. Ariadne Shipping Co.,* 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218 (1970);

---

7. One need not have an employer-employee relationship with workers who engage in allegedly protected or prohibited activity to be considered an employer under the Act. *See* 29 U.S.C. §§ 152(2); 152(3). Thus, an unfair labor practice charge may be brought against a property owner even though it employs none of the workers involved in the activities giving rise to such charge. *See Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976); *Seattle–First Nat'l Bank v. NLRB,* 651 F.2d 1272 (9th Cir.1980).

8. The *Garmon* court expressed this concept as follows:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law." 359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782.

9. In *Sears, Roebuck & Co. v. San Diego District Council of Carpenters,* 436 U.S. at 195, 98 S.Ct. at 1756, 56 L.Ed.2d at 224, the Court listed specific instances of conduct which had been held subject to state court jurisdiction:

"See *Construction Workers v. Laburnum Constr. Corp.,* 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025 (1954)] (threats of violence); *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131 [78 S.Ct. 206, 2 L.Ed.2d 151 (1957)] (violence); *Automobile Workers v. Russell,* 356 U.S. 634 [78 S.Ct. 932, 2 L.Ed.2d 1030 (1958)] (violence); *Linn v. Plant Guard Workers,* 383 U.S. 53 [86 S.Ct. 657, 15 L.Ed.2d 582 (1966)] (libel); *Farmer v. Carpenters,* 430 U.S. 290 [97 S.Ct. 1056, 51 L.Ed.2d 338 (1977)] (intentional infliction of mental distress)."

*Giant Food Mkts. v. NLRB*, 633 F.2d 18 (6th Cir.1980). The same rule has been applied to union handbilling. *See Eastex, Inc. v. NLRB*, 437 U.S. 556, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978); *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *Sentry Mkts., Inc. v. NLRB*, 914 F.2d 113 (7th Cir.1990).

It has also been recognized that in certain circumstances a trespass upon the employer's private property may be protected. In *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), for example, employers refused to permit nonemployee union organizers to distribute union literature on company-owned parking lots. Unfair labor practice charges were filed against the employers, whom the NLRB found to have unlawfully denied the organizers access to their private property. On appeal, the Supreme Court upheld the NLRB, concluding that the employee's right to receive organizational material under Section 7 must be balanced against the employer's right to control the use of its property to reach an "[a]ccommodation between the two ... with as little destruction of one as is consistent with the maintenance of the other." [10] 351 U.S. at 112, 76 S.Ct. at 684, 100 L.Ed. at 982–83. The Court ruled that where there was no alternative means by which the union's message could be transmitted to its intended audience, the organizers' trespassory handbilling was a protected activity which superceded the employers' private property rights. *See generally* 48 Am.Jur.2d *Labor & Labor Relations* § 875 (1979).

In *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), the Supreme Court applied these principles to a strike in which warehouse employees peacefully picketed their employer's retail store at an enclosed shopping mall. After an agent of the mall owner threatened the pickets with arrest for trespassing if they did not leave the mall, the union filed an unfair labor practice charge against the mall owner. The Supreme Court concluded that the principles of accommodation enunciated in *Babcock* controlled,[11] but stated that "[t]he locus of that accommodation, however, may fall at differing points along the spectrum depending on the nature and strength of the respective § 7 rights and private property rights asserted in any given context." 424 U.S. at 522, 96 S.Ct. at 1038, 47 L.Ed.2d at 208–09. The Court went on to state that "[i]n each generic situation, the primary responsibility for making this accommodation must rest with the Board in the first instance." 424 U.S. at 522, 96 S.Ct. at 1038, 47 L.Ed.2d at 209.

The Union argues that the *Babcock* accommodation principles are applicable in this case [12] and that the circuit court should

10. The Court in *Babcock* stated:
"Organization rights are granted to workers by the same authority, the National Government, that preserves property rights. Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the other. The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. But when the inaccessibility of employees make ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize." 351 U.S. at 112, 76 S.Ct. at 684, 100 L.Ed. at 982–83.

11. In *Hudgens*, the NLRB had originally ruled that the picketing was protected by the First Amendment. After reviewing several of its prior cases, *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972); *Amalgamated Food Employees Union, Local No. 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), the Court concluded that the owner of the shopping mall could restrict stranger access to his private property because the "constitutional guarantee of free speech is a guarantee only against abridgement by government, federal or state." 424 U.S. at 513, 96 S.Ct. at 1033, 47 L.Ed.2d at 202. The Court concluded that the rights of the parties were to be determined solely under the Act and remanded the case to the NLRB for application of the *Babcock* accommodation principles.

12. The record shows that the Riesbeck store is approximately 120 feet from the closest of the three shopping center entrances and not visible from the farthest one, about three-tenths (.3) of a mile away. The Union asserts that restricting its picketing and handbilling activity to these locations rendered ineffective its ability to communicate its message to its intended audience, i.e., Riesbeck's customers.

have deferred to the jurisdiction of the NLRB. On the other hand, the plaintiffs below do not challenge the Union's right to picket and handbill, but only its right to conduct such activity on their private property. The plaintiffs assert that trespass is one of those activities so deeply rooted in local feeling and responsibility that it falls outside the ambit of the Act and is a proper matter for adjudication by state courts.

In support of their position, the plaintiffs rely on *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, supra.* In *Sears,* nonemployee union members set up a picket line on the property of a Sears department store to advise the public that the store had hired nonunion carpenters. A Sears employee asked the pickets to leave, but they refused. Sears instituted a trespass action in state court and subsequently obtained an injunction preventing the union from picketing on store property. The union asserted that the state courts had no jurisdiction to enjoin the picketing because it was arguably protected under the Act. Significantly, the union did not file an unfair labor practice charge with the NLRB.

The Supreme Court started with the proposition that the standards for judging whether the picketing was arguably protected or arguably prohibited are not to be applied in a rigid or inflexible manner.

"While the *Garmon* formulation accurately reflects the basic federal concern with potential state interference with national labor policy, the history of the labor pre-emption doctrine in this Court does not support an approach which sweeps away state-court jurisdiction over conduct traditionally subject to state regulation without careful consideration of the relative impact of such a jurisdictional bar on the various interests affected." 436 U.S. at 188, 98 S.Ct. at 1752–53, 56 L.Ed.2d at 219–20. (Footnote omitted).

The Supreme Court recognized a two-pronged inquiry for application of the *Garmon* principles in circumstances where the activity is not clearly subject to the Act. The first inquiry is whether the activity is arguably prohibited under Section 8. In this situation, the existence of "a significant state interest protecting the citizen from the challenged conduct" is important. 436 U.S. at 196, 98 S.Ct. at 1757, 56 L.Ed.2d at 225. However, "[t]he critical inquiry ... is ... whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board." 436 U.S. at 197, 98 S.Ct. at 1757, 56 L.Ed.2d at 225. The Court concluded in *Sears* that the issue which would have been presented to the NLRB was whether the picketing had been proscribed by Section 8. This was unrelated to the state claim of trespass, which challenged only the location of the picketing. Consequently, the issues being distinct, there was no realistic risk of interference with the NLRB's primary jurisdiction which would warrant pre-emption of state court jurisdiction over the trespass action.

With respect to the second prong of the inquiry, the Supreme Court was willing to concede that the union's trespassory picketing was arguably protected under Section 7 of the Act. The Court concluded, however, that this fact alone was not sufficient to warrant preemption of state court jurisdiction in all cases: "The primary-jurisdiction rationale justifies pre-emption only in situations in which an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or else to induce his adversary to do so." 436 U.S. at 201, 98 S.Ct. at 1759, 56 L.Ed.2d at 228. The Court held that the union's failure to file with the NLRB an unfair labor practice charge challenging Sears' demand that the pickets leave its property [13] left the employ-

13. In note 44, in part, of *Sears,* 436 U.S. at 207–08, 98 S.Ct. at 1763, 56 L.Ed.2d at 232, the Supreme Court stressed that Sears' demand that the union cease the trespassory picketing was critical to its holding:

"The fact that Sears demanded that the Union discontinue the trespass before it initiated the trespass action is critical to our holding. While it appears that such a demand was a precondition to commencing a trespass action under California law, see [*Sears, Roebuck & Co. v. San Diego County District Council,* 49 Cal.App.3d 232] 122 Cal.Rptr. 449 (1975), in order to avoid a valid claim of pre-emption, it

er with no forum for an orderly resolution of the issue except in state court. 436 U.S. at 201–02, 98 S.Ct. at 1759–69, 56 L.Ed.2d at 228–29. The Court concluded that the primary jurisdiction rationale was relatively unimportant when compared with the employer's interest in having an opportunity to litigate whether the picketing was, in fact, protected and held that preemption of the state court's jurisdiction was not warranted solely on the ground that the activity was arguably protected.

The majority in *Sears* did not specifically decide whether the state court's jurisdiction of the trespass claim would have been preempted if, as in the case before us, the union had filed an unfair labor practice charge with the NLRB.[14] The majority opinion, however, made a definite suggestion that the state court's jurisdiction would be preempted in such circumstances: "As long as the union has a fair opportunity to present the protection issue to the Labor Board, it retains meaningful protection against the risk of error in a state tribunal. In this case the Union failed to invoke the jurisdiction of the Labor Board[.]"[15] 436 U.S. at 207, 98 S.Ct. at 1762, 56 L.Ed.2d at 231. (Footnote omitted).

Other courts which have reached the issue have concluded that the filing of an unfair labor practice charge with the NLRB preempts state court jurisdiction to enjoin trespassory labor activity in the absence of other factors such as mass picketing or violence. *See Shirley v. Retail Store Employees Union*, 225 Kan. 470, 592 P.2d 433 (1979) (trespassory employee picketing); *Cross Country Inn, Inc. v. South Cent. Dist. Council, United Bhd. of Carpenters & Joiners of Am.*, 50 Ohio App.3d 8, 552 N.E.2d 232 (1989) (trespassory non-

employee handbilling); *Wiggins & Co., Inc. v. Retail Clerks Union Local No. 1557*, 595 S.W.2d 802 (Tenn.1980) (trespassory nonemployee picketing). *Contra Weis Mkts. Inc. v. United Food & Commercial Workers Union, Local 400*, 85 Md.App. 284, 583 A.2d 1092 (1991); *Smitty's Super Mkts., Inc. v. Retail Store Employees Local 322*, 637 S.W.2d 148 (Mo.App.1982). *See generally* Annot., 56 L.Ed.2d 813 (1979). As the Supreme Court of Kansas stated in Syllabus Point 3 of *Shirley, supra*:

"If a union, after receiving from the employer or property owner a notice to cease trespassory picketing, files a complaint with the NLRB and the board takes jurisdiction, a Kansas district court has the power to enjoin trespassory picketing only where there is shown to be actual violence or a threat of immediate violence or some obstruction to the free use of property by the public that immediately threatens public health or safety or that denies to an employer or his customers reasonable ingress or egress to and from the employer's place of business."

We must agree with this interpretation. There is certainly precedent for the conclusion that the labor activities the Union engaged in here were arguably protected under Section 7. In *Sears*, for example, the Court stated: "Since it cannot be said with certainty that, if the Union had filed an unfair labor practice charge against Sears, the Board would have fixed the locus of the accommodation at the unprotected end of the spectrum, it is indeed 'arguable' that the Union's peaceful picketing, though trespassory, was protected." 436 U.S. at 205, 98 S.Ct. at 1761, 56 L.Ed.2d at 230. *See*

---

would have been required as a matter of federal law in any event."

**14.** Nor does it appear that the Supreme Court has addressed the issue of nonemployee trespassory picketing or handbilling since *Sears*.

**15.** This statement was reinforced in note 43 of *Sears*, 436 U.S. at 207, 98 S.Ct. at 1763, 56 L.Ed.2d at 231:

"Not only could the Union have filed an unfair labor practice charge pursuant to

§ 8(a)(1) of the Act at the time Sears demanded that the pickets leave its property, but the Board's jurisdiction could have been invoked and the protection of its remedial powers obtained even after the litigation in the state court had commenced or the state injunction issued. See *Capital Service, Inc. v. NLRB*, 347 U.S. 501 [74 S.Ct. 699, 98 L.Ed. 887 (1954)]; *NLRB v. Nash–Finch Co.*, 404 U.S. 138 [92 S.Ct. 373, 30 L.Ed.2d 328 (1971)]."

*also Jean Country,* 291 N.L.R.B. No. 4, 129 L.R.R.M. 1201 (Sept. 27, 1988). *See generally* 51A C.J.S. *Labor Relations* § 527. Moreover, by issuing the complaint against Riesbeck, the NLRB has already exercised some degree of jurisdiction over the Union's claim.

Accordingly, we conclude that peaceful informational picketing by a union may be arguably protected by Section 7 of the Act, even though it occurs on private property, if the union files an unfair labor practice charge against the parties seeking to prevent such activity. The NLRB had primary jurisdiction of the dispute between Riesbeck and the Union, and the circuit court should have deferred to such jurisdiction once the Union filed the unfair labor practice charge.

■ Elm Grove asserts that our conclusions with respect to Riesbeck should not prevent the circuit court from issuing an injunction on its behalf. Elm Grove notes that the unfair labor practice charge did not name it as a party and argues that under the decision in *Sears,* the Union cannot challenge Elm Grove's right to an injunction in state court.

We believe Elm Grove misreads the *Sears* opinion. To avoid even a potential conflict between state courts and the NLRB, the primary jurisdiction rationale provides, in effect, for a presumption in favor of preemption when the conduct in question is arguably protected under the Act. *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54,* 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984). *See Belknap, Inc. v. Hale,* 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983). In *Sears,* the Supreme Court simply refused to give the union the benefit of this presumption where it had deprived the employer of the opportunity to litigate the issue administratively by failing to file an unfair labor practice charge with the NLRB.

Unlike the property owner in *Sears,* Elm Grove was not necessarily excluded from litigating the protected character of the Union's activities before the NLRB. Under Section 10(b) of the Act, 29 U.S.C. § 160(b), any person other than a party may intervene in an administrative proceeding involving an unfair labor practice charge at the discretion of the NLRB or of the hearing officer or agency.[16] *See J.P. Stevens Employees Educ. Comm. v. NLRB,* 582 F.2d 326 (4th Cir.1978); *International Union, United Auto., Aerospace & Agric. Implement Workers,* 129 U.S. App.D.C. 196, 392 F.2d 801 (1967), *cert. denied,* 392 U.S. 906, 88 S.Ct. 2058, 20 L.Ed.2d 1364 (1968). Because the complaint issued by the Regional Director states that the Acting Counsel General is seeking to prevent Elm Grove from enforcing the circuit court's injunction, it seems apparent that a motion by Elm Grove to intervene in the proceedings would be granted. *See generally* 51A C.J.S. *Labor Relations* § 551. Consequently, the rationale underlying the Supreme Court's refusal to preempt state court jurisdiction in *Sears* is not present in this case.[17]

■ The Union also claims that Elm Grove never advanced this position below and, therefore, has waived it. More importantly, the Union points to the language in note 44 of *Sears,* 436 U.S. at 207–08, 98 S.Ct. at 1763, 56 L.Ed.2d at 232, where the Court stated that a demand to discontinue the trespass is necessary "in order to avoid a valid claim of pre-emption ... as a matter of federal law[.]"[18] Elm Grove made no such demand of the Union.

■ Finally, we point out that our decision does not affect the circuit court's order insofar as it enjoined the pickets from engaging in obstructive, disruptive, or in-

---

16. 29 U.S.C. § 160(b) provides, in pertinent part: "In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony."

17. We decline to address the subsidiary issues raised by Elm Grove as to the possible scope of the Regional Director's inquiry and whether the NLRB's delay in reaching a decision justifies the state court in asserting jurisdiction.

18. As to the relevant text of note 44 of *Sears,* see note 13, *supra.*

timidating behavior. Such conduct is not protected under the Act and is clearly subject to state court control in the first instance, even though the NLRB is considering an unfair labor practice charge filed by a union arising out of the same incident. *See Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957); *Rainbow Tours, Inc. v. Hawaii Joint Council of Teamsters*, 704 F.2d 1443 (9th Cir.1983); *Kaplan's Fruit & Produce Co. v. Superior Court*, 26 Cal.3d 60, 160 Cal. Rptr. 745, 603 P.2d 1341 (1979); *PTA Sales, Inc. v Retail Clerks Local No. 462*, 96 N.M. 581, 633 P.2d 689 (1981). *See also* 51A C.J.S. *Labor Relations* § 527.

For the reasons stated above, we conclude that the circuit court erred in issuing the injunction on behalf of Elm Grove and Riesbeck to the extent that it moved the location of the picketing. State court jurisdiction was preempted by the Union's filing of the unfair labor practice charge with the NLRB. Consequently, we reverse the judgment of the circuit court insofar as it enjoined the Union from peaceful picketing and/or handbilling on shopping center property.

Reversed.

NEELY, J., dissents.

NEELY, Justice, dissenting:

The majority do not understand *Sears, Roebuck and Company v. San Diego District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), but in all truth, the judges who wrote *Sears* and related cases had no clear vision, and produced murky prose because no broad consensus could be reached.[1]

In the case at hand, Riesbeck is a non-union food store, and the Union is making no attempt to organize its workers. The Union, however, wishes to inform potential customers that Riesbeck does not pay union wages. The Union entered onto the common area of the shopping center in which Riesbeck is located and distributed handbills urging shoppers to limit their purchases to Union stores. The Union was not on Riesbeck's individual leasehold, but rather on the shopping center's common area.

Riesbeck and the shopping center landlord then went to state court to enjoin the Union from entering on their private property for the purpose of doing them injury, and the circuit court entered a preliminary injunction. Up to that point, no one had gone to the National Labor Relations Board. However, after the circuit court entered its preliminary injunction, the Union filed an unfair labor practice charge with the NLRB. Therefore, the question in this case is not whether the jurisdiction of the NLRB would preempt state jurisdiction *should the NLRB choose to take jurisdiction*, but rather what happens in this dispute between the entry of the pickets onto the landlords' private property and the NLRB's final decision.

Justices Blackmun and Powell, in their concurrences in *Sears*, discussed the problem of a "jurisdictional no-mans's land". Justice Powell addressed the "jurisdictional no-man's land" problem that exists *after* a matter like the one before us is presented to the NLRB:

> With all respect, this optimistic view overlooks the realities of the situation.

---

1. The majority opinion in *Sears* was far from unanimous. Although six justices joined in the result, Justice Blackmun filed a concurring opinion in which he differed with Justice Powell on the central question before us today, and Justice Brennan, joined by Justices Marshall and Stewart, filed a dissenting opinion.

    We find the same lack of consensus in the case of *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), a case that bears on the merits of the case before us, although the merits were not argued on appeal. In *Hudgens*, the Court overruled prior cases, and held that there was no First Amendment right to picket in a private shopping center, but that a determination of whether a union may picket in a private shopping center was to be made under the Labor Management Relations Act. Justice Stewart delivered the opinion of the Court. Justice Powell filed a concurring opinion, in which Chief Justice Burger joined. Justice White filed an opinion concurring in the result. Justice Marshall filed a dissenting opinion in which Justice Brennan joined, and Justice Stevens took no part in the consideration or decision of the case. This is the kind of clear, definite law that really helps lower courts and is like unto a full employment act for lawyers.

Trespass upon private property by pickets, to a greater degree than isolated trespass, is usually organized, sustained, and sometimes obstructive—without initial violence—of the target business and annoying to members of the public who wish to patronize that business. The "danger of violence" is inherent in many—though certainly not all—situations of sustained trespassory picketing. One cannot predict whether or when it may occur, or its degree. It is because of these factors that, absent the availability of an equivalent remedy under the National Labor Relations Act, a state court should have the authority to protect the public and private interests by granting preliminary relief.

In the context of trespassory picketing not otherwise violative of the Act, the Board has no comparable authority. If a § 8(a)(1) charge is filed, nothing is likely to happen "in a timely fashion." The Board cannot issue, or obtain from the federal courts, a restraining order directed at the picketing. And it may take weeks for the General Counsel to decide whether to issue a complaint. Meanwhile, the "no-man's land" prevents all recourse to the courts, and is an open invitation to self-help. I am unwilling to believe that Congress intended, by its silence in the Act, to create a situation where there is no forum to which the parties may turn for orderly interim relief in the face of a potentially explosive situation.

\* \* \* \* \* \*

In sum, I do not agree with Mr. Justice Blackmun that "the logical corollary of the Court's reasoning" in its opinion today is that state-court jurisdiction is preempted forthwith upon the filing of a charge by the union. I would not join

the Court's opinion if I thought it fairly could be read to that effect.

436 U.S. at 212–14, 98 S.Ct. at 1765–66 (Powell, J., concurring).[2] Justice Powell noted that under the Court decisions, state courts were not precluded from providing relief against actual or threatened violence, but that such relief may come too late, in light of the danger of violence inherent in sustained trespassory picketing.

There are, with regard to the jurisdictional no-man's land, a number of possibilities, of which today's majority has miraculously chosen the worst. The first possibility, of course, is for the employer to go out and hire some very large and very mean lads to persuade the picketers in the good old-fashioned way that they had made a mistake coming on private property. Justice Powell referred to this as "self-help", and labor lawyers sometimes refer to it as the "ungood" way of handling picketers. In fact, nine out of ten labor lawyers of my acquaintance advise their business clients that beating up picketers with baseball bats, particularly when the Union reciprocates by dynamiting the employer's premises, can create the mother of all labor disputes.

Now, assuming that the employer rejects the "ungood" way, what should it do? The majority implies—but does not say—that perhaps the employer should go to the notoriously glacial and incompetent NLRB and file an unfair labor practice charge. Unfortunately, (even forgetting the NLRB's limited sense of urgency) the Union has committed no unfair labor practice, anymore than the Union would have committed an unfair labor practice if every male member of the local had paraded naked around a convent shouting four letter expletives. The majority opinion in *Sears* unequivocally says at least that much.[3]

**2.** The section 8(a)(1) to which Justice Powell referred can be found at 29 U.S.C. § 158. Old hands at labor law are apt to refer to labor law provisions by their location within the various labor Acts, rather than by their location in the United States Code. 29 U.S.C. § 141 *indicates* that the former National Labor Relations Act of 1935 and the later amendments should be referred to by the title of the Taft–Hartley amend-

ments, that is—the Labor Management Relations Act, 1947, yet many old hands still refer to the old National Labor Relations Act. In this opinion, I will give United States Code citations.

**3.** The Court said, for instance:
In this case, Sears could not directly obtain a Board ruling on the question whether the Union's trespass was federally protected.

Indeed, one can read the LMRA with the attentiveness of a scholastic monk or the free-wheeling imagination of a deconstructionist yet find not one colorable ground for the employer's invocation of NLRB jurisdiction. This is so because the Union has not engaged in an unfair labor practice enumerated in 29 U.S.C. § 158(b)(1)–(7) (1990), [LMRA, § 8(b)(1)–(7) ]. (1) The Union has not restrained its members or any other "employees" in the exercise of rights guaranteed in 29 U.S.C. § 157, nor has it coerced the employer in the selection of labor representatives or the adjustment of grievances. (2) The Union has not engaged in prohibited discrimination. (3) The Union has not refused to bargain collectively with the employer. (4) The Union has not engaged in a third party boycott. (5) The Union has not charged excessive membership dues. (6) The Union has not attempted to exact anything of value from the employer. (7) The Union has not engaged in improper recognitional picketing. However, there is at least *arguably* a trespass to private property, and this issue must be decided by someone someplace or the "ungood" method of baseball bats and dynamite will take over, *faute de mieux.*

Therefore, unless the employer wishes to avail itself of a pleasure akin to listening to the sound of one hand clapping, it must either repair to the "ungood" method or solicit the intervention of the state court. At that point, the state court is under an obligation to decide whether the property rights of the employer and the shopping center owner are being violated. Nothing in the cases decided by the Supreme Court of the United States or the U.S. Court of Appeals for the Fourth Circuit indicates that the state court shouldn't make the call, including most notably *Sears, supra,* which actually indicates that the state court *should* make the call.

We know that if the employer selects the "ungood" method of ejecting the picketers, then the Union may go to the National Labor Relations Board. Logically, then, if the employer goes to state court for a chap in a black robe instead of going over to steubenville for a chap with a baseball bat, the Union *still* ought to be able to go to the National Labor Relations Board. The big question is: Between the time the employer gets the injunction from the state court and the NLRB issues an order, can the Union continue to trespass and picket? Logically, the answer to that question is "no." And, nothing in *Sears* implies to the contrary.

The majority misreads the undeniably confusing *Sears* language. In *Sears,* Justice Stevens, writing for the majority, said:

> Nevertheless, several considerations persuade us that the mere fact that the Union's trespass was *arguably* protected is insufficient to deprive the state court of jurisdiction in this case.

436 U.S. at 200, 98 S.Ct. at 1759. The *Sears* situation was similar to the case before us. In the *Sears* case, the Union picketed Sears in order to "secure work for union members and to publicize Sears' undercutting of the prevailing area standards for the employment of carpenters." 436 U.S. at 184, 98 S.Ct. at 1751. Sears wanted the Union off its property. The Court said:

> Because the assertion of state jurisdiction in a case of this kind does not create a significant risk of prohibition of protected conduct, we are unwilling to presume that Congress intended the arguably protected character of the Union's conduct to deprive the California courts of jurisdiction to entertain Sears' trespass action.

*Id.* at 207, 98 S.Ct. at 1762. Likewise, I believe that the arguably protected character of the Union's picketing of Riesbeck does not deprive this State's circuit court of jurisdiction in the first instance.

The United States Court of Appeals for the Fourth Circuit (a court with at least a passing acquaintance with federal labor law) reads *Sears* the way I do. In the recent case of *Rum Creek Coal Sales v. Caperton,* 926 F.2d 353 (1991), the Fourth Circuit said:

Such a Board determination could have been obtained only if the Union had filed an unfair labor practice charge alleging that Sears had

interfered with the Union's § 7 right to engage in peaceful picketing on Sears' property. 436 U.S. at 201, 98 S.Ct. at 1759–60.

In *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the Court considered whether the NLRA deprived a "state court of the power to entertain an action by an employer to enforce state trespass laws against picketing which is arguably—but not definitely—prohibited or protected by federal law." Id. at 182, 98 S.Ct. at 1749. In an opinion by Justice Stevens, the Court concluded that, under the *Garmon* doctrine, neither the arguably protected character of the picketing, nor the arguable illegality of it, deprived the state courts of jurisdiction. *Id.* at 198, 207, 98 S.Ct. at 1758, 1762–63. The picketing at issue was peaceful, orderly, and nonobstructive.

Of course, should the NLRB conclude that the employer has committed an unfair labor practice by unreasonably restricting the right of the Union peacefully to picket and disseminate information, the NLRB can say so and then its decision preempts the state court injunction.[4] Furthermore, this allocation of authority between state and federal authorities gives the Union much opportunity to seek a favorable ruling on the merits without the baseball bats and the dynamite. Indeed, the Union gets two bites at the apple: (1) it can argue in state court that it has a federally-created right to picket on the public areas of shopping centers, and hope that the state judge (elected as he is by Union voters) agrees; and (2) the Union can file an unfair labor practice complaint with the NLRB. If the Union loses in front of the circuit judge, it should then cease picketing until such time as the NLRB renders a decision. If, then, the NLRB renders a decision that is at variance with the state court injunction, the state court injunction becomes a nullity and

the Union may proceed to do whatever the NLRB says that it may do.

---

**4.** Indeed, the NLRB has already decided a case factually *identical* to the case before us (only the names were different), and came out in favor of the Union. However, the U.S. Court of Appeals for the Sixth Circuit remanded the case on evidentiary grounds that make little sense unless one understands that the Sixth Circuit's natural disposition to Unions was substantially less favorable than the NLRB's in 1980. With the Party of Taft–Hartley firmly in power for sixteen out of the past twenty years, one might surmise that the position of the Sixth Circuit would not necessarily offend *today's* NLRB. *Giant Food Markets v. N.L.R.B.,* 633 F.2d 18 (6th Cir.1980).