489 S.E.2d 266

**STATE of West Virginia ex rel. UNITED MINE WORKERS OF AMERICA, LOCAL UNION 1938, Dana V. Bender, Clarence D. Dixon, Dennis D. Harris, Paul G. Isner, Donald D. Lloyd, Jerry A. Marco, Mason E. Payne, Larry I. Pigott, Dwight L. Riegel, Jimmie G. Samples, James H. Shiflett, Ronald L. Thorne and Wayne A. Woodall, Petitioners,**

**v.**

**The Honorable John L. WATERS, Judge of the Circuit Court of Barbour County, and Energy Marketing Company, Inc., a West Virginia Corporation, Respondents.**

No. 23838.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1997.

Decided Feb. 24, 1997.

Dissenting Opinion of Justice Maynard July 16, 1997.

Charles F. Donnelly, Hostler & Donnelly, L.C., Charleston, for Petitioners.

Anthony Julian, Charles Anderson, Fairmont, for Respondents.

STARCHER, Justice:

This is a writ of prohibition in which the petitioners, a labor union local and thirteen of its members, seek to prohibit the respondent circuit judge from exercising jurisdiction in a case arising out of a labor dispute.

In the underlying case, the respondent judge issued a preliminary injunction restraining the petitioners' "picket-line" conduct at the request of the respondent coal company without any notice to the petitioners. Subsequently the judge entered a default judgment against the petitioners, making the injunction permanent and adjudging the petitioners liable for damages; the judge later denied the petitioners' motion to set aside the default judgment and to defer juris-

diction to the National Labor Relations Board.

We find that the *ex parte* preliminary injunction was issued in violation of petitioners' due process rights and should be vacated. Additionally, we hold that the petitioners' motion to set aside the default judgment should have been granted. We also find that the record in the proceedings below does not support the circuit court's continued exercise of its jurisdiction in this case. We grant the writ as moulded.

## I.

### Facts and Background

On July 15, 1996, the respondent Energy Marketing Co., Inc. ("Energy Marketing") filed a complaint in the Circuit Court of Barbour County, naming as defendants Local 1938 of the United Mine Workers of America ("Local 1938") and thirteen individuals [1] (the union local and the individuals are collectively hereinafter referred to as "petitioners").

The complaint alleged: (1) that Energy Marketing (the plaintiff below) was in the process of mining coal at a Barbour County mine that Energy Marketing had purchased from Rauer Coal Corporation ("Rauer") in a bankruptcy sale; (2) that the petitioners (the defendants below) were Local 1938 and its members who were formerly employed by Rauer; and (3) that the petitioners had "stopped, harassed, and threatened coal truck drivers . . . hired by Energy Marketing . . . to transport its coal to market . . ." from the former Rauer mine.

The complaint further alleged that Energy Marketing was "without a remedy at law to protect its business from the economic hardships caused by the refusal of the truck drivers to fulfill the contracts due to threats of violence." No dates, times, or places for the petitioners' alleged conduct were further specified in the complaint. The complaint had been verified by Energy Marketing's president on July 13, 1996.

---

1. Dana V. Bender, Clarence D. Dixon, Dennis D. Harris, Paul G. Isner, Donald D. Lloyd, Jerry A. Marco, Mason E. Payne, Larry I. Piggott, Dwight L. Riegel, Jimmie G. Samples, James H. Shiflett, Ronald L. Thorne and Wayne A. Woodall.

The complaint sought a "Temporary Restraining Order" [sic] [2] against petitioners "enjoining them from interfering with the extradition [sic] and transportation of coal ..." by Energy Marketing. The complaint also made a claim for money damages against the petitioners "in amounts adequate to compensate plaintiff for any and all losses occasion [sic] by the actions of the defendants."

On the same day that the complaint was filed (July 15, 1996) Energy Marketing's counsel went to the Taylor County chambers [3] of the respondent judge and asked the judge to issue a preliminary injunction against petitioners. Based on counsel's statements,[4] the respondent judge signed an "Order Granting Plaintiff's Request for Temporary Injunction."

The July 15, 1996 preliminary injunction order was brief. The order did not contain findings of fact or conclusions of law, or state any reasons for its issuance. The order preliminarily enjoined the petitioners from "obstructing in any manner ... [Energy Marketing's] access to or from their property ... [or] interfering with the extradition [sic] and transportation of coal by ... [Energy Marketing] to and from its property ... in any manner whatsoever." The order stated that no bond would be required of Energy Marketing, but gave no reason for not requiring a bond.

Subsequently, Energy Marketing had copies of the preliminary injunction order and the complaint personally served upon the union members named in the complaint.

Three union members were served on July 15, the day the order was signed; five were served on the next day, July 16; one was served on July 18; one on July 19; one on July 22; one on July 23; and one on August 15, 1996.

On July 17, 1996, the petitioners filed an unfair labor practice charge against Energy Marketing with the National Labor Relations Board ("NLRB"), pursuant to the National Labor Relations Act, 29 U.S.C. Secs. 151–169 [1988]. The charge complained that Energy Marketing had "discriminated in terms of hiring against the former employees of Rauer Coal Company, based on their concerted activity and status as union members." This NLRB charge is pending.

On about August 28, 1996, without notice to the petitioners, Energy Marketing tendered to the respondent judge a proposed default judgment order.[5] On August 29, 1996, the respondent judge signed the order. As with the July 15, 1996 preliminary injunction order, the default judgment order did not contain any findings of fact or conclusions of law (other than reciting the nonappearance of the petitioners and the consequent entitlement of Energy Marketing to judgment by default.)

Using the same wording as the July 15, 1996 preliminary injunction order, the August 29, 1996 default judgment order made permanent the restrictions on the petitioners which had been preliminarily ordered. The default judgment order also ruled that Energy Marketing was entitled to collect damages, attorney fees, and court costs from the

2. "West Virginia's injunction procedures differ from those found in the Federal Rules of Civil Procedure." *Ashland Oil v. Kaufman,* 181 W.Va. 728, 732, 384 S.E.2d 173, 177 (1989) Unlike the federal court system, West Virginia law does not provide for "temporary restraining orders," but only "preliminary injunctions." *Compare West Virginia Rules of Civil Procedure* 65 [1960] *with Federal Rules of Civil Procedure* 65(b) [1987]. This opinion will use the correct West Virginia terminology.

3. The respondent judge presides over a two-county circuit consisting of Barbour and Taylor counties.

4. Affidavits submitted by the respondents to this Court state that Energy Marketing's counsel

made an oral "proffer" to the respondent judge, telling him that there had been threats of violence made to employees of the Energy Marketing mine, that one or two Energy Marketing employees had stopped working out of fear of reprisal, and that picketers had stopped, harassed, and threatened coal truck drivers. Counsel also told the judge that there was a likelihood of "irreparable harm" if the mine could not meet its contractual obligations. The record is silent as to whether Energy Marketing's counsel actually showed the respondent judge a copy of the complaint.

5. It appears that affidavits supporting the request for default judgment were not filed with the circuit clerk until August 30, 1996.

petitioners. Lastly, the order set October 9, 1996 for a hearing on the amount of damages owed by the petitioners to Energy Marketing.

On September 9, 1996, the petitioners filed an answer and counterclaim. The answer denied all of Energy Marketing's allegations of harassment, threats, and illegal interference with coal transportation. The petitioners' counterclaims included: (1) tortious interference with petitioners' contractual rights; (2) violations of the West Virginia Human Rights Act, *W.Va.Code*, 5–11–1 *et seq.* [1967]; and (3) violations of federal labor law based upon the refusal of Energy Marketing to honor alleged collective bargaining agreements. Invoking, *inter alia, West Virginia Rules of Civil Procedure* 60(b), the petitioners filed with their answer and counterclaim a "Motion to Dismiss the Complaint and Vacate the Injunction and Judgment." [6]

On October 9, 1996, the respondent judge heard argument on the petitioners' motion to dismiss the complaint and vacate the default judgment. The petitioners' counsel asserted that the petitioners' picketing was entirely peaceful, and argued that the circuit court should defer jurisdiction to the NLRB, because the pending NLRB charges pre-empted the circuit court's jurisdiction. The petitioners' counsel also contended, *inter alia*, that the lack of notice to the petitioners

required the voiding of the injunction and the default judgment.[7]

Energy Marketing suggested to the circuit court that any deficiencies in the court's orders—including the lack of findings of fact, conclusions of law, or a statement of the court's reasoning—could be cured by an order *nunc pro tunc* making appropriate findings and conclusions. (Energy Marketing's response to the show cause order issued by this Court stated that Energy Marketing had not noticed the petitioners of the preliminary injunction application because of insufficient information—the company's counsel only knew the union members' names, and counsel did not know whether petitioners would be represented by the same counsel who had appeared for the union in the Rauer bankruptcy hearing a year earlier.)

At the close of the hearing on October 9, 1996, the respondent judge ruled from the bench, denying the petitioners' motion to dismiss the complaint and vacate the injunction and default judgment, and summarily concluding that the circuit court's jurisdiction was not pre-empted by the NLRB. The judge stayed the circuit court proceedings to calculate and ascertain the amount of damages owed by petitioners to Energy Marketing to allow petitioners to appeal to this Court. Upon petitioners' application for a writ of prohibition, we granted a Rule to Show Cause on October 31, 1996. On No-

---

**6.** On September 30, 1996, the petitioners filed a second unfair labor practice charge with the NLRB. This charge claimed that Energy Marketing had "unlawfully maintained and prosecuted a lawsuit in state court against the former employees of Rauer Coal Company, in retaliation for their concerted activity and status as union members." On December 5, 1996, the National Labor Relations Board wrote regarding this second NLRB charge, in a letter to the petitioners' counsel:

While it appears that the 'ex parte' injunction issued by the state court, pursuant to the Employer's lawsuit may be read to improperly impinge upon the exclusive jurisdiction of the Board, it is sufficiently ambiguous so as also to be read to only proscribe conduct which may be properly regulated by the state, such as blocking ingress and egress and mass picketing . . . it appears that the state judiciary will independently resolve the tension between the National Labor Relations Act and the state's legitimate interest to regulate conduct which is

threatening injury to persons or property. Accordingly, I am administratively deferring proceedings before the Board pending further proceedings before the West Virginia courts.

**7.** The petitioners' counsel also maintained that Energy Marketing's request for judgment by default had been premature and untimely, because service of process on *all* of the individuals identified in the complaint as union members was not completed until August 15, 1996. The petitioners' counsel cited *State ex rel. Glass Blowers Association v. Silver*, 151 W.Va. 749, 155 S.E.2d 564 (1967), in which this Court held that service of process on a labor union should be accomplished by naming and serving individual union members as representatives of the union. Energy Marketing argued that service on all but one Local 1938 member had been completed by July 23, 1966—more than 20 days prior to August 29, 1996; and Energy Marketing offered to dismiss voluntarily the default judgment against the one union member who was not served until August 15, 1996.

vember 15, 1996, the respondent judge issued a brief written order reflecting his earlier oral ruling; this order did not contain findings of fact or a statement of the court's reasoning.

## II.

### Discussion

### A.

### Standard of Review

■ First we briefly state the standard of review. Findings of fact made by the circuit court are reviewed under a clearly erroneous standard; with respect to the conclusions of law reached by the circuit court, we apply a *de novo* standard of review; and with respect to the issuance, scope and terms of a preliminary injunction, we apply the standard of abuse of discretion. *State of W.Va. by and through McGraw v. Imperial Marketing*, 196 W.Va. 346, 352, 472 S.E.2d 792, 798 (1996), *cert. denied*, — U.S. —, 117 S.Ct. 391, 136 L.Ed.2d 307 (1996). With respect to a motion to vacate a default judgment, we review the circuit court's decision under an abuse of discretion standard, but with a presumption in favor of the adjudication of cases upon their merits. *Evans v. Holt*, 193 W.Va. 578, 457 S.E.2d 515 (1995).

With these standards in mind, we examine the following issues: (1) did the circuit court err in the issuance of the *ex parte* preliminary injunction; (2) did the circuit court err in refusing to vacate the default judgment; and (3) did the circuit court err in continuing to exercise its jurisdiction after charges had been filed with the NLRB?

### B.

### The Preliminary Injunction

■ We examine the issuance of the preliminary injunction in light of the due process guarantees in the West Virginia and United States Constitutions.[8] In *Ashland Oil v. Kaufman*, 181 W.Va. 728, 731, 384 S.E.2d 173, 176 (1989), this Court determined that "[t]he existing rules pertaining to issuance of preliminary injunctions in West Virginia do not adequately protect the due process rights of the parties that are enjoined."

■ To assure that there is adequate protection of due process rights in the issuance of preliminary injunctions, this Court stated in *Ashland Oil:*

Although the effect of an *ex parte* order granting a preliminary injunction remains the same under W.Va.Code § 53–5–8, a court shall grant such an injunction only if it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition. The applicant's attorney must certify to the court the efforts, if any, which have been made to give the notice and the reasons supporting any claim that notice should not be given.

Syllabus Point 3, *Ashland Oil, Inc. v. Kaufman*, 181 W.Va. 728, 384 S.E.2d 173 (1989).

■ Measured against the foregoing *Ashland Oil* requirements, the procedure used by Energy Marketing in seeking an *ex parte* preliminary injunction was inadequate, insufficient and improper.

Energy Marketing has offered no explanation or excuse for its failure to adhere to the procedures mandated by *Ashland Oil*—which required the company, *when it applied for an* ex parte *injunction*, to certify to the respondent judge the reasons why Energy Marketing did not give or attempt to give notice to the petitioners of the application. This error in the procedure used to obtain the injunction is thus conceded.

The "reason" belatedly advanced by Energy Marketing for its failure to give prior notice to the petitioners—that it only knew the "names" of the picketers—is wholly unreasonable and unpersuasive. The president of Energy Marketing verified the complaint two days before Energy Marketing's counsel filed the action. Therefore, at least two days before approaching the respondent circuit judge, Energy Marketing (1) knew the identity of the union local and the full names of the named individual union members; and

---

**8.** *W.Va. Const.*, art. 3, § 10; *U.S. Const.*, amend. XIV.

(2) had prepared legal papers seeking an injunction against the petitioners. Moreover, on the same day that the complaint was filed—but *after* the preliminary injunction order was signed—the complaint and the order were served on three of the petitioners (and on five more of the petitioners on the following day.) The conclusion is inescapable that Energy Marketing could have given the petitioners the notice to which they were entitled, but chose not to do so.

■ "The most basic of the procedural safeguards guaranteed by the due process provisions of our state and federal constitutions are notice and the opportunity to be heard, which are essential to the jurisdiction of the court in any pending proceeding." *P.G. & H. Coal Co., Inc. v. International Union, United Mine Workers of America,* 182 W.Va. 569, 579, 390 S.E.2d 551, 561 (1988) (McHugh, J. concurring), *quoting Chesapeake and Ohio System Federation v. Hash,* 170 W.Va. 294, 299, 294 S.E.2d 96, 101 (1982). *Cf. Eastern Associated Coal Corp. v. John Doe,* 159 W.Va. 200, 207 n. 2, 220 S.E.2d 672, 678 n. 2 (1975) (Failure to give notice and opportunity to defend may deprive court of jurisdiction); *but cf. Anderson and Anderson Contractors, Inc. v. Latimer,* 162 W.Va. 803, 257 S.E.2d 878 (1979) (Miller, J., concurring) (questioning whether delay alone can result in a loss of jurisdiction).

Because the record clearly shows that the petitioners were denied their fundamental constitutional rights by the issuance of an *ex parte* preliminary injunction against them without notice or an opportunity to be heard, and without compliance with the established requirements and safeguards for the issuance of an *ex parte* injunction where such notice and opportunity is not given, we hold that the injunction may not be enforced and should be vacated.[9] *See Ashland Oil,* 181 W.Va. 728, 384 S.E.2d 173 (1989).

### C.

### *The Default Judgment*

■ We next address the circuit court's decision not to set aside the default judgment. In addressing this issue, we do not decide whether service on the petitioners was complete by July 23, 1996, or not complete until August 15, 1996—and therefore whether Energy Marketing's request for a default judgment was or was not premature. We assume *arguendo* that the default judgment was not entered prematurely; and we hold that in applying settled principles of law the circuit court should have nevertheless granted the petitioners' motion to vacate the default judgment.

■ "A motion to vacate a default judgment is addressed to the sound discre-

9. Petitioners also contend that the injunctions at issue in this case are flawed because they lack specificity in their terms, and lack a description in detail of the act or acts sought to be restrained, as required by *Ashland Oil,* 181 W.Va. at 733, 384 S.E.2d at 178. We decline to decide this issue, as it is not necessary to our ruling. However, we observe that the language used by the circuit court prohibiting "interference" with the "extradition of coal ... *in any manner whatsoever* ..." (emphasis added) may not be specific enough on its face to pass constitutional muster. This language in the injunction is probably what the NLRB was referring to in its December 5, 1996 letter, which stated that the circuit court's injunction in this case is "ambiguous" and could be read to prohibit conduct protected by the National Labor Relations Act. *See Consolidation Coal Co. v. Disabled Miners of Southern W. Va.,* 442 F.2d 1261 (4th Cir.1971), *cert. denied,* 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971) ("In any other manner" language in injunction is overbroad restriction on protected speech.)

Petitioners also contend: (1) that the preliminary injunction is invalid because no motion accompanied the complaint, citing *West Virginia Rules of Civil Procedure* 7(b)(1) [1988]; (2) that the injunctions are invalid because the circuit court did not set a bond or state reasons for not setting one, citing *W.Va.Code,* 53–5–9 [1923]; (3) that the filing of supporting affidavits on August 30, 1996, *after* the entry of the default judgment order, violated the requirements of *West Virginia Rules of Civil Procedure* 55(2) [1960]; and (4) that the preliminary injunction did not contain the "findings of fact and conclusions of law which constitute the grounds of its action...." which are required by *West Virginia Rules of Civil Procedure* 52(a). Because the injunction must be vacated on other grounds, we do not address these contentions.

We also note that the circuit court did not indicate that or how it had engaged in the "balancing" which should be part of considering a request for preliminary injunctive relief. *See Jefferson County Board of Education v. Jefferson County Education Ass'n,* 183 W.Va. 15, 24, 393 S.E.2d 653, 662 (1990).

tion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syllabus Point 6, *Evans v. Holt*, 193 W.Va. 578, 457 S.E.2d 515 (1995). It is a basic policy established by this Court that cases should be decided on their merits, and consequently default judgments are not favored and a liberal construction should be accorded a Rule 60(b) motion to vacate a default judgment order. *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 472, 256 S.E.2d 758, 762 (1979).

■■■■ "The Rules of Civil Procedure pertaining to the setting aside of default judgments should be liberally construed in order to provide relief from the onerous consequences of default judgments." Syllabus Point 2, *Parsons v. McCoy*, 157 W.Va. 183, 202 S.E.2d 632 (1973). If any doubt exists as to whether relief should be granted, such doubt should be resolved in favor of setting aside the default judgment in order that the case may be heard on the merits. *Parsons*, 157 W.Va. at 191, 202 S.E.2d at 637.

In determining whether a default judgment should be entered in the face of a Rule 6(b) motion [10] or vacated upon a Rule 60(b) [11] motion, the trial court should consider: (1) the degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party [footnotes not in original].

Syllabus Point 3, *Parsons v. Consolidated Gas Supply Corp.*, *supra*, 163 W.Va. at 464, 256 S.E.2d at 758 (1979).

The record does not reflect the circuit court's reasoning for refusing to set aside the default judgment. Reviewing *de novo* a matter which calls for the application of law to undisputed facts, we apply the four factors enumerated above in *Parsons* to the petitioners' motion to vacate the default judgment entered in favor of Energy Marketing. All four factors weigh in favor of setting aside the default judgment.

**10.** *West Virginia Rules of Civil Procedure* 6(b) [1978] states:

Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, all the parties to the action, by written stipulation filed with the court, may agree at any time to a different period, or the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them.

**11.** *West Virginia Rules of Civil Procedure* 60(b) [1960] states:

Mistakes; Inadvertence; Excusable Neglect; Unavoidable Cause; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2)

newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

First, Energy Marketing has not claimed any prejudice resulting from delay by the petitioners in responding to the complaint. Nor is any prejudice apparent from the record.

Second, petitioners have contested the factual and legal bases of Energy Marketing's claims, and have made counterclaims. There is no reason to conclude at this juncture that the petitioners' defenses are not meritorious. Moreover, as discussed *infra* at Sec. III. D., disputed factual matters in the case call into question the fundamental issue of the circuit court's jurisdiction.

Third, the interests at stake include a judgment against petitioners for as-yet undetermined damages, attorney fees and costs. Additionally, substantial statutory and constitutional rights may be at stake. These are significant interests.

Fourth, the petitioners were not intransigent. They advanced colorable good-faith reasons for not filing their answer and counterclaim and defensive motions prior to the default judgment's entry. The petitioners acted in a timely fashion (eleven days from the default judgment's issuance) to seek relief from the default judgment. In *Evans v. Holt,* 193 W.Va. at 587, 457 S.E.2d at 524, a period of one month to file a motion to set aside a default judgment after learning of it was held to be reasonable. In *Parsons v. Consolidated Gas Supply Corp.,* 163 W.Va. at 473, 256 S.E.2d at 763, a one and one-half month delay in answering was accepted as excusable neglect.

█ Additionally, inasmuch as the foregoing factors are essentially equitable concerns, it is relevant that Energy Marketing, the beneficiary of the default judgment, had "unclean hands"—because it disregarded established mandatory legal procedures in obtaining the *ex parte* preliminary injunction. A court of equity should be reluctant to enshrine as permanent a judgment obtained in violation of established due process safeguards simply because of a party's brief delay in responding to a claim. "Law, it should be remembered, is not properly a game of forfeits!" *White v. Berryman,* 187 W.Va. 323, 335, 418 S.E.2d 917, 929 (1992) (Neely, J., dissenting.)

Since all of the factors to be considered weigh on behalf of setting aside the default judgment, the circuit court was constrained under the facts of the case and the applicable legal standards to grant the petitioners' motion to set aside the judgment; consequently, the court's decision not to set aside the default judgment was an abuse of discretion.

### D.

### *Jurisdiction*

Petitioners argue that the circuit court should have dismissed the entire action brought by Energy Marketing for lack of jurisdiction after unfair labor practice charges arising out of the same matters at issue in the circuit court case had been filed by petitioners with the NLRB, pre-empting the circuit court's jurisdiction. Petitioners also contend that before the circuit court could properly issue or maintain an injunction against the petitioners, the court was first required to find the existence of violence, mass picketing, or overt threats of physical violence.

Energy Marketing responds that the initial allegations of threats of violence and intimidation which were made when the case was filed permitted the exercise of jurisdiction by the circuit court, and that the court's jurisdiction was not subsequently pre-empted by the filing of charges with the NLRB.

█ This Court recently addressed the issue of the jurisdiction of a circuit court over the conduct of pickets in a labor dispute when a charge has been filed with the NLRB in *Riesbeck Food Markets, Inc. v. United Food and Commercial Workers, Local Union 23,* 185 W.Va. 12, 404 S.E.2d 404 (1991), *cert. denied,* 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991). In *Riesbeck,* after a lengthy discussion of the importance of deference to federal labor policy and to the national administrative procedures established to govern the conduct of labor disputes, we stated:

A state court may enjoin pickets from engaging in obstructive, disruptive, or intimidating behavior. Such conduct is not

protected under the National Labor Relations Act, and is clearly subject to state court control in the first instance, even though the National Labor Relations Board is considering an unfair labor practice charge filed by a union arising out of the same incident.

Syllabus Point 2, *Riesbeck, supra.*

However, *Riesbeck* also held that—aside from exercising its jurisdiction to prevent obstructive, disruptive or intimidating conduct—a circuit court should "defer to the primary and exclusive jurisdiction of the National Labor Relations Board to determine all contentions arising out of activities protected by Section 7 or prohibited by Section 8 of the [National Labor Relations] Act [29 U.S.C. 151–169 [1988]]." *Riesbeck,* 185 W.Va. at 14, 404 S.E.2d at 406.

In *Riesbeck,* this Court voided for lack of jurisdiction the portion of a circuit court's permanent injunction which prohibited arguably trespassory but peaceful picketing, where the union had filed a charge with the NLRB (*after* the circuit court issued a preliminary injunction) claiming that the state court trespass proceeding against the union violated rights protected under the National Labor Relations Act. Thus, the facts in *Riesbeck* are quite similar to the events in the instant case.

In *Riesbeck,* we instructed the circuit court to defer to the NLRB's jurisdiction, except as necessary to prevent disruptive, obstructive, or intimidating conduct. *Riesbeck,* 185 W.Va. at 19–20, 404 S.E.2d at 411–412. *See United Maintenance and Mfg. Co., Inc., v. United Steelworkers of Am.,* 157 W.Va. 788, 204 S.E.2d 76 (1974) (state court injunction in a labor dispute must be specifically directed to acts or conduct designed to accomplish an illegal purpose).

With *Riesbeck* as a guide to the proper scope of a circuit court's jurisdiction over labor dispute picketing when the jurisdiction of the NLRB has been invoked, we turn to the circuit court's determination in this case to continue to exercise its jurisdiction after charges were filed with the NLRB.

■■■ A threshold issue is the permissible scope of *our* review of the circuit court's

determination not to defer to the NLRB. The instant challenge to the circuit court's exercise of its jurisdiction is brought by a writ of prohibition. Our traditional rule in prohibition is that the writ will lie where the trial court does not have jurisdiction, or having jurisdiction exceeds its legitimate powers. *Monongahela Power Co. v. Starcher,* 174 W.Va. 593, 328 S.E.2d 200 (1985). A writ of prohibition will lie to prohibit the enforcement of an injunction where the trial court did not have jurisdiction or exceeded its proper jurisdiction. *Meadows on Behalf of Professional Employees of West Virginia Educ. Ass'n v. Hey,* 184 W.Va. 75, 399 S.E.2d 657 (1990); *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985); *see Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468 (1977) (Miller, J., concurring).

■■■ However, we ordinarily defer to the circuit court's resolution of factual issues determinative of its jurisdiction. Thus in *Downs v. Lazzelle,* 102 W.Va. 663, 136 S.E. 195 (1926), *overruled on other grounds, Stewart v. State Road Commission of West Virginia,* 117 W.Va. 352, 185 S.E. 567 (1936), this Court stated at Syllabus Point 1 that "[p]rohibition will not lie against an inferior court or a judge thereof to deprive him of the right to pass upon the extrinsic facts determinative of jurisdiction." In *State ex rel. Zirk v. Muntzing,* 146 W.Va. 878, 894, 122 S.E.2d 851, 860 (1961), we stated: "[W]here ... the jurisdiction of the circuit court depends upon disputed questions of fact, that court has the right to determine its own jurisdiction from the facts before it, and prohibition will not be granted to prevent it from so doing." And in *State ex rel. Williams v. Narick,* 164 W.Va. 632, 642, 264 S.E.2d 851, 857 (1980), we stated: "As a general principle, where there is some competent evidence before the court which will support [the court's ruling] ... the ruling will not be subject to attack. It is only in a case where there has been no evidence ... that prohibition will lie."

In *Eastern Associated Coal Corp. v. Doe,* 159 W.Va. 200, 210, 220 S.E.2d 672, 679 (1975), a pre-*Ashland Oil* case, we discussed the issue of when a court can initially exercise its jurisdiction and grant an *ex parte* preliminary injunction respecting picketing

in a labor dispute. NLRB charges were not an issue in *Eastern Associated.* We stated:

[T]he requirement of subject matter jurisdiction is met initially if: 1) the court has the general power to grant the type of relief demanded under any circumstances; 2) the pleadings demonstrate that a set of facts may exist which could *arguably* invoke the court's jurisdiction; and 3) the allegations both with regard to the facts and the applicable law are of sufficient substance to require the court to make, in an adversary proceeding, a reasoned determination of its own jurisdiction.

*Eastern Associated* involved contempt proceedings for the violation of an *ex parte* preliminary injunction prohibiting picketing. The picketers claimed that they were not guilty of contempt because the underlying injunction was issued *ex parte* and because the injunction violated their free speech rights. Therefore, the picketers argued, the circuit court exceeded its jurisdiction in issuing the injunction, making the injunction unenforceable.

In *Eastern Associated,* we noted that "[c]omplex issues often make the determination of subject matter jurisdiction difficult, as for example, justiciability, ripeness, mootness, standing, case or controversy, and political questions." *Eastern Associated,* 159 W.Va. at 208, 220 S.E.2d at 678. We emphasized in *Eastern Associated* that although the court may initially issue an *ex parte* preliminary injunction upon a showing of colorable jurisdiction, there must be "adequate and effective remedies ... for orderly and prompt review ..." upon a challenge to the court's jurisdiction. *Eastern Associated,* 159 W.Va. at 210, 220 S.E.2d at 680. *But cf.*

*Anderson and Anderson Contractors, Inc. v. Latimer,* 162 W.Va. 803, 257 S.E.2d 878 (1979) (Miller, J., concurring) (questioning whether delay alone can result in a loss of jurisdiction).

 Applying the principles set forth in the preceding cases to the instant case, it is apparent that Energy Marketing's initial allegations, although bare-bones, "demonstrate[d] that a set of facts may exist which could arguably invoke the court's jurisdiction [under *Riesbeck*]. ..." *Eastern Associated,* 159 W.Va. at 210, 220 S.E.2d at 679. Therefore (leaving aside for our analysis the other errors in the issuance of the preliminary injunction), based on Energy Marketing's initial allegations, the circuit court did not err in initially determining that it had colorable subject matter jurisdiction to consider issuing a preliminary injunction.

 However, upon the filing of NLRB charges, *Riesbeck* teaches that the circuit court's continued exercise of its jurisdiction over picketers largely turns on the factual issue of the need for state court injunctive relief to prevent violent, disruptive, obstructive or intimidating conduct. *Riesbeck,* 185 W.Va. at 20, 404 S.E.2d at 412.

 With respect to this jurisdiction-determinative issue, the circuit court in the instant case did not make any factual findings which supported its decision not to defer jurisdiction to the NLRB.[12] In the absence of such findings by the trial court, we are not constrained by our customary deference to a circuit court's determinations on factual matters going to its jurisdiction from examining the circuit court's decision not to defer to the NLRB.

**12.** We note that 29 U.S.C. Sec. 107 sets forth prerequisites that must be satisfied before a federal court may exercise jurisdiction to issue a temporary restraining order or preliminary injunction in a labor dispute. These prerequisites include the requirement that:

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in

opposition thereto, if offered, and except after findings of fact by the court....

These federal court prerequisites, while not binding upon state courts, are an important indication of our federal labor policy, and can provide guidance to circuit courts considering a request for a preliminary injunction in a labor dispute. *Cf. Ashland Oil,* 181 W.Va. at 733, 384 S.E.2d at 179 (Adherence to certain procedures for preliminary injunctions and temporary restraining orders contained in *Federal Rule of Civil Procedure* 65 will more adequately assure due process.)

■ From the court's statements in the transcript of the October 9, 1996 hearing on the petitioners' motion to dismiss the complaint and vacate the default judgment, it appears that the circuit court relied solely upon Energy Marketing's initial allegations—and upon the assumed conclusive effect of the default judgment as to the truth of those allegations—as sufficient grounds to refuse to consider petitioners' claim of NLRB preemption.

We do not need to address the question of whether or when a default judgment may have a conclusive effect as to jurisdictional allegations or bar the consideration of a claim of pre-emption because we have concluded that the default judgment issued in this case should have been vacated. The default judgment therefore cannot support the circuit court's decision not to defer to the NLRB.

■ Leaving aside the default judgment, the sole possible basis supporting the circuit court's decision is Energy Marketing's initial allegations. However, *Riesbeck* and *Eastern Associated* teach that simply "looking again" at the initial allegations made in the case is not the "reasoned determination of its own jurisdiction," *Eastern Associated,* 159 W.Va. at 210, 220 S.E.2d at 679 (1975), which is required of the circuit court upon a challenge to the court's jurisdiction such as the one made by petitioners.[13] Upon a party's claim of pre-emption of state court jurisdiction by proceedings before the National Labor Relations Board, a circuit court should conduct an evidentiary hearing and make findings of fact and conclusions of law to determine whether there is a need for the continued exercise of state court jurisdiction, or whether the circuit court should defer to the jurisdiction of the NLRB.

The record before us contains no reasoned determination by the circuit court, based upon substantial evidence and after a fair hearing for all parties, that there is a need for a circuit court injunction to prevent violent, obstructive, disruptive or intimidating conduct.

■ Lacking any such determination, we are constrained to grant the writ of prohibition as moulded. However, if the circuit court finds, based upon substantial evidence and after a fair hearing for all parties, that an injunction is needed as authorized by *Riesbeck* to prevent violent, disruptive, obstructive, or intimidating conduct in connection with the labor dispute, the circuit court may exercise its legitimate jurisdiction in accord with the principles enunciated herein.[14]

### III.

#### *Conclusion*

For the foregoing reasons, we grant the writ of prohibition as moulded.

Writ Granted As Moulded.

MAYNARD, Justice, dissenting:

(Filed July 16, 1997)

This is an original prohibition proceeding—it is *not* an appeal. Since it is not an appeal, the type of record normally filed with an appeal has not been filed with this Court. The majority, nonetheless, while outwardly acknowledging that the case is a prohibition proceeding, has treated it like an appeal in order to reach the conclusion which it seeks to reach. From that point of view, I feel I must dissent.

This Court has stated that prohibition lies in two situations. The first is where a lower tribunal does not have jurisdiction of the subject matter of the case before it; the second is where a lower tribunal exceeds its legitimate powers in acting with regard to

---

**13.** *Cf. Consolidation Coal Co. v. Disabled Miners,* 442 F.2d 1261 (4th Cir.1971), *cert. denied* 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971) (due process requires that a district court's findings to support a preliminary injunction must be based upon something more than a one-sided presentation of the evidence.)

**14.** The mere existence of disruptive, obstructive or intimidating picketing conduct at a time many

months past should not be in itself automatic grounds for issuance of an injunction, because the purpose of an injunction is to prevent *future* misconduct, and a preliminary injunction should only be granted upon a showing of need and the consideration of all other applicable factors. *See Jefferson County Board of Education v. Jefferson County Education Ass'n,* 183 W.Va. 15, 24, 393 S.E.2d 653, 662 (1990).

the subject matter. *McDowell County Board of Education v. Stephens,* 191 W.Va. 711, 447 S.E.2d 912 (1994), *State ex rel. Reed v. Douglass,* 189 W.Va. 56, 427 S.E.2d 751 (1993), and many other cases. In the present case the majority states: "[T]he circuit court did not err in initially determining that it had colorable subject matter jurisdiction to consider issuing a preliminary injunction." The majority, thus, in essence has conceded that prohibition does not lie under the principle that the Court did not have jurisdiction of the subject matter in the case. Further, there is nothing in the case, and the majority points to nothing, which demonstrates that the circuit court exceeded its legitimate powers in issuing the injunction involved in this case.

This Court has also recently recognized that prohibition may be used in a discretionary manner when a lower court is not acting in excess of its jurisdiction, but this use of prohibition is appropriate only to correct substantial clear-cut legal errors that are plainly in contravention of clear statutory constitutional or common law mandate. The disputes involving such errors must be resolvable independently of any disputed facts because prohibition can only be used in this way in cases in which there is a high probability that the trial court's ruling will be completely reversed if error is not corrected in advance. *State ex rel. Amy M. v. Kaufman,* 196 W.Va. 251, 470 S.E.2d 205 (1996). See also, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979).

In the present case, the relators, called the "petitioners" by the majority, have conceded, and the majority has acknowledged, that Energy Marketing Company, Inc., asserted reasons for not giving prior notice of the fact that it was seeking a preliminary injunction. Nonetheless, the majority says that the reasons were not, in fact, valid. In my view, there was thus a critical disputed fact in this case. That disputed fact was whether Energy Marketing Company, Inc. did or did not have a valid reason for not giving prior notice to the relators. Where there is such a disputed fact, *State ex rel. Amy M. v. Kaufman, id.,* indicates that "discretionary" prohibition does not lie.

My ultimate conclusion is that this Court should have dismissed the relators' petition because they have failed to establish the fundamental predicates for prohibition relief. I am not certain that the majority actually ever seriously or appropriately considered the possibility that prohibition does not lie. The prominent section on standards of review in the majority opinion—which cites *appeal* standards of review—suggests that at the very least the majority was confused about what was happening in this case. Again I say, this is *not* an appeal and we are not the "reviewing" Court. We have original jurisdiction in this case.

I have other reasons for dissenting from the majority's decision in this case. The majority predicates its conclusion that the circuit court erred in granting the preliminary injunction on the ground that the circuit court issued the preliminary injunction even though Energy Marketing Company, Inc. gave no notice to the relators that it was seeking a temporary injunction. As previously indicated, and as recognized by the majority, Energy Marketing Company, Inc. did assert a reason for not giving the prior notice. The company asserted that prior to filing its petition, it did not know who the relators' attorney was, and inferentially did not know precisely where to give notice. The majority argues that because the complaint was verified before the filing of the action, and that notice was given to some of the relators on the same day as the filing of the petition, but after the filing was completed, Energy Marketing Company must have known how or where to give the notice prior to the filing of the action. The majority states: "The conclusion is inescapable that Energy Marketing could have given the petitioners the notice to which they were entitled, but chose not to do so." I find this absurd. The majority's view is not at all "inescapable"—a very plausible alternative to that "inescapable" alternative is that Energy Marketing really did not know where to serve the notice prior to the filing of its petition, but did learn where to serve the notice the same day, but after the filing.

Frankly, I am at a loss to understand how we have a default judgment in an injunctive

proceeding below, but, going on, the majority proceeds to resolve the default judgment question on the basis of the pre-emption issue. There is a large body of law in this State which indicates that prohibition does not lie to correct mere errors and should not be used to usurp the function of an appeal, *Handley v. Cook,* 162 W.Va. 629, 252 S.E.2d 147 (1979), *State ex rel. Casey v. Wood* 156 W.Va. 329, 193 S.E.2d 143 (1972), *State ex rel. Zirk v. Muntzing,* 146 W.Va. 878, 122 S.E.2d 851 (1962), *Brown v. Arnold,* 125 W.Va. 824, 26 S.E.2d 238 (1943), *Taylor v. Stevenson,* 82 W.Va. 677, 97 S.E. 136 (1918), and *Buskirk v. Judge of the Circuit Court,* 7 W.Va. 91 (1873). But in this case the majority attempted to do just that.

Everything involved in this case could have been handled by appeal, and if the majority had insisted that an appeal be prosecuted, as our law requires, the outcome might have been very different from the outcome reached by the majority. That outcome, as previously indicated, based its decision on a manifest, "inescapable" determination of fact rather than on what actually occurred.

In my opinion, courts have a very real obligation to protect individuals, organizations, and society as a whole from violence, and to protect them in the exercise of the rights given to them by the law. Often, preliminary injunction questions in labor disputes must be resolved in the heat of violent disorder, in a threatening crisis. In such situations, I feel that the policy needed to protect society outweighs the need of the judiciary to dot every "i" in the pursuit of perfect legal formality. Here, I believe, the majority turned the dotting of "i's," along with the use of that new vehicle, the "INESCAPABLE," to make the factual findings needed to support the conclusion which it wanted to reach. I am personally not a legal contortionist and do not wish to be a party to such twisting of the law, and I dissent from what the majority has done.