569 S.E.2d 436

**STATE of West Virginia ex rel. Roger L. WARE, Petitioner,**

v.

**Honorable John L. HENNING, Jr., Judge of the Circuit Court of Randolph County, Randall L. Murphy, Mark Eaton, Dorothy Davenport, Wilton E. Williams, Jr., Trustees of Mountain View Conference, Seventh Day Adventist Church, a Religious Organization, and Don Jacko, Respondents.**

No. 30471.

Supreme Court of Appeals of West Virginia.

Submitted May 22, 2002.

Decided June 17, 2002.

**190**

David A. Sims, Esq., Gregory R. Tingler, Esq., Law Offices of David A. Sims, Elkins, for Petitioner.

Stephen G. Jory, Esq., Jory & Smith, Elkins, for Respondents Murphy, et al.

PER CURIAM.

The relator in this original proceeding in prohibition, Roger L. Ware, entered into a contract to sell the Elkins Seventh Day Adventist Church a parcel of land and an abutting right-of-way. Subsequently the relator, who was having difficulty complying with certain provisions of the contract, and who believed that the contract was void because it had not been executed by a party having authority under the law to act for a religious group, refused to convey the property. Representatives of the church then instituted a specific performance proceeding in the Circuit Court of Randolph County to compel the relator to make the conveyance. They also prayed that the court enjoin the relator from committing certain acts which, they claimed, would render the right-of-way unusable. Ultimately, the circuit court granted the church representatives the relief which they sought.

In the present original prohibition proceeding, the relator claims that the church representatives were not entitled to the specific performance or the injunction which they sought because the contract was void, and he further claims that the circuit court

exceeded its legitimate right in granting the church representatives the relief which they sought.

## I.

## FACTS

The relator owns two adjoining tracts of land located in Randolph County, West Virginia. The first tract, a five acre tract, borders U.S. Route 250, south of the town of Beverly. The second tract is located directly behind the five acre tract and consists of 26.5 acres.[1] The 26.5 acre tract does not border Route 250 South.

The relator listed the 26.5 acre tract with Johnson Realty, a local real estate firm, for sale. Upon learning that the tract was being offered for sale, Don Jacko, the pastor of the Elkins Seventh Day Adventist Church, approached the realtor and, on May 22, 2001, signed a contract whereby the church allegedly undertook to purchase the tract. The purchaser was identified as the "Seventh Day Adventist Church." At the time, Mr. Jacko, although the pastor of the church, was not a trustee of the church. He signed the contract simply as "Don W. Jacko." Attached to the contract was a statement of contingencies which required, among other things, that a 40 foot right-of-way be deeded in conjunction with the property. It appears that the 40 foot right-of-way was intended to pass between Route 250 and the 26.5 acre tract over the five acre tract owned by the relator. The contingency specifically stated: "40' deeded right-of-way, with minimum of 30' wide gravel road not to exceed 10 percent grade to the edge of the buyer's property by closing date." The contract provided that the purchase price would be $145,000. The contract initially provided that closing was to take place within 90 days of the signing of the contract. At a later date, by agreement of the parties, the closing date was extended to October 10, 2001.

For reasons which are not wholly clear, the transaction did not close on October 10, 2001, and on October 22, 2001, parties who identified themselves as the trustees of the Mountain View Conference, Seventh Day Adventist Church, a religious organization, and Don Jacko, instituted an action against the relator in the Circuit Court of Randolph County for specific performance of the contract to purchase the 26.5 acre tract. In their complaint, the trustees alleged that they were trustees duly appointed by the Mountain View Conference, Seventh Day Adventist Church, and pursuant to W. Va.Code 35–1–1 et seq., and were empowered to hold title to real estate used for religious purposes. The plaintiff, Don Jacko, alleged that he was the agent of, and acting in behalf of, the trustees in executing the contract with the relator for the purchase of the real estate.

In the complaint, the plaintiffs further stated that the relator had advised them by letter dated October 10, 2001, that he was refusing to sell the real estate according to the signed agreement of the parties. They asserted that they had fulfilled all of the terms of the offer and acceptance required on their part, and that they were entitled to specific performance. They, therefore, prayed that the court grant them specific performance and order the relator to perform his obligations.

Additionally, the plaintiffs alleged that the relator was engaged in the process of excavating the 5.05 acre tract adjacent to the parcel which they wished to purchase in such a manner that in the future it would be impossible for him to convey a right-of-way, as had been specified in the contingencies attached to the contract, and that the excavation would render the tract which they sought to purchase unsuitable for the purposes envisioned. They, therefore, prayed that the court grant them injunctive relief to prevent further excavation until such time as the court had rendered a decision on the specific performance issue.

On the day the complaint was filed, the Circuit Court of Randolph County, without giving notice to the relator, entered a temporary restraining order based upon the allega-

---

1. This parcel is also identified as a 29.54 acre parcel. The actual size of it is irrelevant to the questions in this proceeding.

tions contained in the complaint. The court also scheduled the matter for a hearing on October 26, 2001.

On October 26, 2001, the relator filed a motion to dissolve the restraining order, and claimed that there was no valid contract for the sale of the land since the plaintiffs lacked capacity to enter into such a contract. Essentially, he took the position that Don Jacko, the pastor of the church who had signed the contract, was not a trustee of the church and that under the law, he did not have power or authority to enter into a real estate transaction in behalf of the church. He also took the position that the trustees/plaintiffs, who were parties plaintiff in the specific performance proceeding, had not properly qualified as trustees under the law and that they, as a consequence, had no power to maintain the action.

Additionally, in a motion to dismiss made on October 28, 2001, the relator claimed that the temporary restraining order issued in the case had expired, that no permanent injunction had issued, that the temporary restraining order was in itself improper in that no notice had been given to him, and that the issuance of the order had violated the requirement of Rule 65 of the West Virginia Rules of Civil Procedure. He asserted that there was no legal basis for the issuance of the restraining order since there was no contract between parties empowered to enter into such contract and since there had been a failure of consideration relating to the contract.

Following the filing of the relator's motions, the "trustee" plaintiffs who had not previously filed their order of appointment, as required by W. Va.Code 35–1–6, filed their appointment order in Randolph County, as required by the Code section, on October 29, 2001.[2] Then, on November 8, 2001, they filed a response to the motion to dismiss the complaint and restraining order. On the same day, the court conducted a hearing on the motion to dismiss. During the hearing, the court concluded that the relator was in contempt of court.

Shortly thereafter, the trustees of the church and Don Jacko filed a motion for summary judgment and requested that the court enter an order requiring specific performance of the contract. Subsequently, on February 5, 2002, the circuit court granted the motion for summary judgment. The relator did not comply with the court's summary judgment order, and on March 6, 2002, the court appointed a special commissioner to transfer the real estate.

In the present proceeding, the relator prays that this Court issue a writ of prohibition to prohibit the circuit court from proceeding further in this matter.

II.

STANDARD FOR DETERMINING WHETHER PROHIBITION IS APPROPRIATE

Traditionally, the issuance of a writ of prohibition has been deemed proper where a trial court does not have jurisdiction to entertain a matter before it, or having jurisdiction, exceeds its legitimate powers. *State ex rel. United Mine Workers of America, Local Union 1938 v. Waters*, 200 W.Va. 289, 489 S.E.2d 266 (1997).

In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), this Court stated:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important

---

**2.** This Code section is quoted and discussed in-  fra.

problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

The Court has also recognized that a writ of prohibition will lie to prohibit enforcement of an injunction where the trial court did not have jurisdiction, or exceeded its proper jurisdiction, in issuing the injunction. *State ex rel. United Mine Workers of America, Local Union 1938 v. Waters, supra.*

### III.

### DISCUSSION

Historically, the acquisition and holding of real estate by religious denominations has been treated differently in West Virginia from the acquisition and holding of such property by natural persons and corporations. A provision of the West Virginia Constitution, Article VI, § 47, deals with the acquisition and holding of land by religious denominations. The full constitutional section states:

No charter of incorporation shall be granted to any church or religious denomination. Provisions may be made by general laws for securing the title to church property, and for the sale and transfer thereof, so that it shall be held, used, or transferred for the purposes of such church, or religious denomination.

Article VI, § 47, West Virginia Constitution.

In the case of *Osnes v. Morris,* 171 W.Va. 266, 298 S.E.2d 803 (1982), this Court examined the historical precedents governing the taking of title to real estate by a religious body. The Court noted that West Virginia's constitutional provision was the legitimate progeny of the English statutes of mortmain which played a central role in the law of property in England. The Court further

noted that the prime object of the mortmain acts was to repress the alarming influence of ecclesiastical organizations and that the Magna Charta itself placed limits on the conveyance of lands to religious organizations. In *Osnes v. Morris,* the Court proceeded to state:

The precedent that any conveyance to an ecclesiastical corporation in contravention of the statutes of mortmain is absolutely void, and not voidable, is overwhelming. In fact, in all of the statutes of mortmain except 7 Edward I stat. 2 up until the American Revolution, the word "void" is used expressly. For example the statute of 9 Hen. III, c. 36 provides:

If any from henceforth give his Lands to any Religious house, and thereupon be convict, the Gift shall be utterly void, and the Land shall accrue to the Lord of the Fee.

While the act of 7 Edw. I stat. 2 on the subject of mortmain does not use the word "void" explicitly, it uses the word "forfeit" which, in the context of the statute, has the same meaning.

*id.* at 269, 298 S.E.2d at 805.

■ The clear holding of *Osnes v. Morris* is that a transfer of land to a religious body in West Virginia which does not comply with the constitutional and statutory provisions relating to such transfers is void *ab initio.*

Pursuant to the constitutional provision, the West Virginia Legislature has enacted a number of statutes governing the acquisition and holding of real estate by churches or religious organizations. One of the statutes, W. Va.Code 35–1–7, specifically provides that trustees shall be the parties qualified to purchase land, to take land by conveyance, and to bring actions relating to such land for congregational-type religious organizations, such as the Seventh–Day Adventist Church, involved in the present case.[3] The statute states:

The trustee or trustees of any church, religious sect, society or denomination, or

---

**3.** The Court notes that the Legislature has made somewhat different provisions for hierarchial churches which specifically designate a bishop or other officer to acquire real estate by deed. *See*

W. Va.Code 35–1–4. The discussion which follows deals with the law relating to congregational-type churches, rather than hierarchial-type churches.

of any individual church, parish, congregation or branch, within this State, shall have the power to receive donations, gifts and bequests of personal property, and, subject to the limitations of section eight [§ 35-1-8] of this article, to take by devise, conveyance or dedication or to purchase and to hold, real property, in trust for such church, religious sect, society or denomination, or for any individual church, parish, congregation or branch; and in their name or names to sue or be sued in all proper actions and suits, for or on account of the real or personal property so held or claimed, and for and on account of any matters relating thereto . . . .

Apparently, because some question arose as to whether prior real estate transactions by church bodies had been proper, the Legislature in 1931 enacted W. Va.Code 35-1-13, a savings provision, which ratified and held valid various real estate transactions made prior to the effective date of the enactment. That Code section provides:

Where any church, religious sect, society, or denomination, or where any individual church, parish, congregation or local branch of any religious sect, society, or denomination, has under its rules and ecclesiastical polity heretofore acquired, by purchase or otherwise, and held, sold or conveyed, church property, or property used for church purposes, by or in the name of its duly appointed bishop, minister, or other ecclesiastical officer, person, or board, such acquisition, purchase, holding, sale or conveyance, heretofore made, is hereby ratified and declared valid: Provided, however, that no such acquisition, purchase, holding, sale or conveyance heretofore made, which has been declared void in any suit or action, and that no rights of third parties who have treated any such acquisition, purchase, holding, sale or conveyance as void under the law as it heretofore existed, and acted accordingly, shall be affected hereby.

W. Va.Code 35-1-13. This enactment did not alter the provision that trustees shall be the parties to act in behalf of a religious body in the purchase and holding of real property and to act in bringing actions relating to real estate, as set forth in W. Va.Code 35-1-7. Further, this Court does not believe that the special circumstances of the present case fall within this savings provision.

In addition to W. Va.Code 35-1-7, W. Va. Code 35-1-5 establishes the procedure whereby church trustees are appointed and removed. Another Code section, W. Va.Code 35-1-6, requires that a certified copy of the order of appointment of trustees be recorded in the office of the clerk of the county court of the county where such appointment is made, as well as in any county wherein the church holds, or by inference intends to hold, real property.[4]

---

4. West Virginia Code 35-1-5 provides:

The conference, synod, presbytery, convention, association, consultors, official board, or other ecclesiastical body or individual representing any church, religious sect, society, or denomination within this State, as also any individual church, parish, congregation or branch, when holding any property separately from the church, denomination, society or sect as a whole, within this State, may from time to time, and whenever occasion may arise, appoint, in such manner as such ecclesiastical body or such individual church, parish, congregation or branch may deem proper, a trustee or trustees for its real and personal property. The body appointing may remove such trustee or trustees, or any of them, and fill all vacancies caused by death, removal or otherwise.

West Virginia Code 35-1-6 provides:

The trustee or trustees heretofore appointed by the circuit court of any county to hold the title to the real and personal property of any church, religious sect, society, or denomination, or of any individual church, parish, congregation or branch, within this State, and who may be acting as such at the time this Code goes into effect, or the proper authorities of such church, religious sect, society or denomination, or of any individual church, parish, congregation or branch, shall cause a certified copy of the order of appointment of such trustee or trustees to be recorded in the office of the clerk of the county court of the county where such appointment was made; and a certificate of every appointment of any trustee or trustees hereafter made by any conference, synod, presbytery, convention, association, consultors, official board, or other ecclesiastical body or individual representing any church, religious sect, society or denomination, or by any individual church, parish, congregation or branch, in accordance with the provisions of the preceding section [§ 35-1-5] signed by the secretary, clerk or other officer

■ In the real estate purchase contract involved in the present case, the purchaser is identified as "Seventh Day Adventist Church." Don W. Jacko signed as the purchaser. In an addendum to the contract, Don W. Jacko is identified as the pastor of Elkins Seventh–Day Adventist Church. At no point in the real estate contract are trustees of the Seventh Day Adventist Church identified, and at no point is there any indication that Don W. Jacko was acting in behalf of the trustees of the Seventh Day Adventist Church.

In fact, the record presented to this Court fails to show that any trustee for the Elkins Seventh–Day Adventist Church had been appointed and placed upon the Randolph County record, as required by law, on May 22, 2001, when the contract was entered into, or even when the present action was instituted on October 22, 2001. To the contrary, the record shows that only after the relator moved to dismiss the specific performance proceeding was a list of trustees produced and recorded on October 29, 2001.[5]

■ After examining the constitutional provision, the statutes, and the cases heretofore cited, this Court believes that it is clear that under the statutory scheme adopted by the Legislature pursuant to the constitutional provision, only trustees for a non-hierarchial religious body or church may accept and hold real estate for the religious body or church. It is further clear that under the law of this State, as enunciated in *Osnes v. Morris, supra,* a conveyance in contravention of the statutory requirements is void *ab initio.*

In light of the law in this State which holds that the laws relating to a church's acquisition of real estate must be complied with to render a transaction valid, this Court believes that the failure of the Seventh Day Adventist Church to comply with the statutes involving the appointment and registration of trustees, and requiring action by proper trustees to validate a real estate transaction, renders its attempted purchase of the relator's real estate void.

This Court has recognized that before a party may be entitled to specific performance of a contract, the contract must be valid. *See, e.g., Hastings v. Montgomery,* 95 W.Va. 734, 122 S.E. 155 (1924). In the present case, the Court believes that there was not a valid contract and that as a consequence, the trial court erred in granting the plaintiffs the relief which they sought.

■ In light of the fact that the lower court's order was erroneous, and in light of the further fact that the appellant is potentially in contempt of court because of the injunction issued by the circuit court, this Court believes that relief by appeal would not be wholly adequate and that it is appropriate under the ruling set forth in Syllabus Point 4 of *State ex rel. Hoover v. Berger, supra,* to issue the writ of prohibition which the relator seeks.

A writ of prohibition is, therefore, issued prohibiting the judge of the Circuit Court of Randolph County from proceeding further in the specific performance, and any ancillary proceedings, currently pending against the relator in that court.

Writ issued.

in charge of the records of the organization making such appointment, and verified by his affidavit, shall be recorded in the office of the clerk of the county court of each county wherein such church, religious sect, society or denomination, or the individual church, parish, congregation or branch, has any property. The county court of every county shall supply the clerk of the county court with a proper record book to the [sic] labeled "Church Trust-

ees" wherein all such certified copies of orders of appointment and such certificates of appointment shall be recorded. The fee for recording such certified copy or such certificate shall be one dollar.

5. The trustee parties' appointment was recorded on October 29, 2001. When pressed during oral argument as to whether they had been appointed elsewhere earlier, counsel was unable to say.